SOBRINOS DE EZQUIAGA, demandante y apelante, *v.* SUCN. DE FRANK BOND HATCH, demandada; TEODORO VIDAL SÁNCHEZ, tercerista y apelado.

No. 4087.—*Visto:* Mayo 13, 1927. *Resuelto:* Julio 18, 1928.

*M. Martínez Dávila,* abogado de la apelante; *O. B. Frazer* y *R. Castro Fernández,* abogado del tercerista apelado.

EL JUEZ ASOCIADO SEÑOR ALDREY, emitió la opinión del tribunal.

La sociedad mercantil Sobrinos de Ezquiaga demandó el 2 de mayo de 1925 a Frank B. Hatch, reclamándole el pago de $5,737.28, sus intereses legales y las costas alegando que como consecuencia del crédito que la demandante concedió al demandado y por concepto de materiales que le ha suministrado para construcciones era en deberle varias partidas de dinero, una por saldo liquidado de conformidad de cuenta corriente entre ellos y tres más por giros que aceptó y no pagó. En la misma fecha obtuvo que la corte decretase el embargo de bienes del demandado para asegurar la cantidad reclamada más mil dólares para intereses y costas y, después de muerto Hatch el 7 del mismo mes de mayo y ser substituido en el pleito por su viuda Carmen Hernández, el día 1°. de

julio el márshal embargó $6,737.28 del dinero que el administrador judicial de la sucesión Hatch tenía en un banco. En ese día fué dictada sentencia a favor de Sobrinos de Ezquiaga.

El 21 de agosto siguiente Teodoro Vidal Sánchez presentó demanda de tercería contra Sobrinos de Ezquiaga y contra la sucesión de Hatch con el fin de que se declarase que los $6,737.28 embargados por Sobrinos de Ezquiaga le pertenecen exclusivamente y para ello alegó que el 3 de febrero de 1924 celebró Hatch un contrato con El Pueblo de Puerto Rico obligándose a construir un edificio en Puerta de Tierra, de esta ciudad, para la Escuela de Medicina Tropical, constituyéndose el tercerista en fiador de que Hatch cumpliría ese contrato v pagaría todos los materiales usados en dicho edificio y también toda cuenta para trabajos efectuados en él: que Hatch empezó la obra pero en 12 de abril enfermó gravemente sin poderla continuar y en ese estado de gravedad quedó hasta que murió el 7 de mayo siguiente: que cuando Hatch empezó la obra celebró un contrato con el tercerista obligándose éste a suministrar a Hatch de mes en mes todo el dinero que necesitase para esa obra y comprometiéndose Hatch a endosar y entregar al tercerista en pago de las sumas que le adelantase todos los cheques dados a él por El Pueblo de Puerto Rico por las certificaciones mensuales de dicha obra: que al encontrarse Hatch incapacitado para la construcción de la obra el Comisionado del Interior requirió al tercerista como fiador de Hatch para que se hiciera cargo de dicha obra y completase el edificio, por lo que el tercerista se hizo cargo de continuar esa obra: que desde el 1°. de abril de 1925 hasta el 30 de dicho mes el tercerista refaccionó a Hatch y gastó en la obra $6,450.24: que a tres personas que contrataron con Hatch el suministro de piedra, materiales y mano de obra para plomería e instalación eléctrica se le deben desde que el tercerista se hizo cargo de la obra hasta el 30 de abril de 1925 la cantidad de $2,816.43 que el terce-

rista está obligado a pagar de acuerdo con su garantía, y que con la anterior cantidad suman $9,266.67: que el 1°. de mayo de 1925 el Gobierno Insular expidió un cheque a favor de Hatch por $8,318.33 por trabajos hechos en esa obra durante el mes de abril anterior, cuyo contrato estaba cumpliendo el tercerista, cantidad que no pertenece a Hatch ni a su sucesión sino al tercerista de acuerdo con su contrato con Hatch antes aludido: que el administrador judicial de la sucesión Hatch cobró ese cheque y depositó el dinero en un banco: que Sobrinos de Ezquiaga embargó $6,737.28, parte del importe de ese cheque, sin que la reclamación que tratan de asegurar sea por materiales suministrados para dicha obra ni por trabajos efectuados en ella: y que la totalidad de la cantidad procedente del cheque del gobierno pertenece al tercerista.

Sobrinos de Ezquiaga se opusieron a la demanda de tercería y celebrado el juicio fué dictada sentencia declarando que los $6,737.28 embargados por ellos son de la exclusiva pertenencia del tercerista: que el embargo trabado sobre ellos debe ser levantado y que esa suma quede expedita y a la libre disposición de Vidal. De esa sentencia apeló la expresada mercantil.

■ Los hechos que se probaron en el juicio son substancialmente los mismos que fueron alegados en la demanda de tercería así como que el importe de ese cheque cobrado por el administrador era la única cantidad ingresada en la cuenta de administración judicial cuando el embargo fué hecho, por lo que la cuestión fundamental a resolver es si es correcta la sentencia apelada declaratoria de que la cantidad embargada por Sobrinos de Ezquiaga es de la exclusiva propiedad del tercerista Vidal y que por tanto debe quedar a su libre disposición.

Si bien en el contrato privado celebrado entre Teodoro Vidal y Hatch presentado como prueba éste se comprometió con aquél a entregarle todos los cheques que El Pueblo de

Puerto Rico librase a su favor por trabajos hechos en la expresada obra, o sea el dinero de esos cheques, en consideración a que Vidal le entregaría de mes en mes todo el dinero que necesitase para la edificación, lo cierto es que el cheque de primero de mayo librado por el Gobierno Insular a favor de Hatch por las obras realizadas durante el mes de abril no llegó nunca a poder de Vidal y que después de la muerte de Hatch el dinero de ese cheque fué ingresado en la cuenta del administrador judicial de la sucesión en un banco. Vidal tenía derecho de acuerdo con su contrato con Hatch a que éste le entregase dicho cheque, pero mientras así no se hiciera continuaba Hatch siendo dueño de él y del dinero que representaba, y como hecho pudo cobrarlo a pesar de su obligación para Vidal. La obligación de Hatch para con Vidal de entregarle el cheque (léase dinero) no quedaba cumplida hasta que verificase su entrega. Por esto, el dinero representado por este cheque era propiedad de Hatch cuando murió y no de Vidal, pasando luego a los bienes de su sucesión representada por el administrador judicial y por ese contrato no llegó a ser propiedad de Vidal. Por consiguiente, el dinero proveniente de ese cheque no era de Vidal por el concepto expresado cuando fue embargado por Sobrinos de Ezquiaga: y el hecho de que Hatch se hubiese comprometido con Vidal a endosarle esos cheques no convertía ese dinero en propiedad de Vidal mientras no le fuera endosado, no creaba a favor de Vidal un gravamen al cual tuviera que estar sujeto el embargo que hizo Sobrinos de Ezquiaga, ni convirtió a Vidal en dueño en equidad o en cesionario del mismo. Mientras el cheque o su importe no fuese entregado a Vidal éste sólo tenía una acción personal contra Hatch para que él cumpliese su contrato.

◼ Independientemente de lo antes dicho la cuestión puede considerarse bajo otro aspecto.

Dispone el Código Civil lo siguiente:

"Art. 1171.—Las obligaciones pueden modificarse:

"1. Variando su objeto o sus condiciones principales.

"2. Substituyendo la persona del deudor.

"3. Subrogando a un tercero en los derechos del acreedor.

"Art. 1178.—Se presumirá que hay subrogación:

"1. Cuando un acreedor pague a otro acreedor preferente.

"2. Cuando un tercero, no interesado en la obligación, pague con aprobación expresa o tácita del deudor.

"3. Cuando pague el que tenga interés en el cumplimiento de la obligación, salvo los efectos de la confusión en cuanto a la porción que le corresponda."

Como hemos visto Hatch tenía el compromiso con El Pueblo de Puerto Rico de construir esa escuela, compromiso que estaba garantizado por Teodoro Vidal como fiador de Hatch para esa obra. Hatch ejecutó la obra hasta fines de marzo en que como consecuencia de un choque de automóvil tuvo una congestión cerebral que lo incapacitó para continuarla y que le produjo la muerte el siete de mayo siguiente; y como consecuencia de la paralización de esa obra por la enfermedad de Hatch el Comisionado del Interior requirió al fiador Vidal para que la continuase pues en otro caso la seguiría por cuenta de Vidal, por lo que éste se hizo cargo de la construcción desde principios de abril haciendo los gastos ascendentes durante ese mes a $9,266.67. Por consiguiente, como Teodoro Vidal tenía interés en el cumplimiento de la obligación de su fiado Hatch, al cumplir por él se subrogó en los derechos que surgían en favor de Hatch contra El Pueblo de Puerto Rico como consecuencia del cumplimiento del contrato y por tanto a que le fuera entregado el dinero correspondiente a las obras de dicho mes ejecutadas por el fiador. Por esto y por virtud de los artículos 1171, No. 3°., y 1178, No. 3°, del Código Civil citado, el dinero pagado por El Pueblo de Puerto Rico por las obras ejecutadas durante el mes de abril con un cheque que expidió a nombre de Hatch pertenece a Vidal como subrogado en los derechos de su fiado. El caso de *Prairie State Bank* v. *U. S.*, 164 U. S. 227, es similar al presente, pues habiendo contra-

tado una persona con el gobierno de los Estados Unidos la construcción de una aduana y habiendo otra persona garantizado como fiador que esa obligación sería cumplida, el contratista hizo un convenio con un banco para que le facilitase el dinero necesario para esa obra y autorizó por escrito al banco para recibir del gobierno de los Estados Unidos el pago de la cantidad que tuviera reservada por esa obra. Después el contratista no cumplió su contrato de la obra y su fiador cumplió por él, sin tener conocimiento del contrato de su fiado con el banco. Entonces el banco y el fiador del contratista establecieron pleitos separados para obtener la cantidad que el gobierno tenía retenida y se resolvió que por la doctrina de subrogación el fiador tenía derecho a dicha cantidad y que el banco no lo tenía porque el primero al hacer los pagos relevó al contratista de su obligación para el cumplimiento de la cual el fiador estaba obligado por su fianza mientras que el banco no tenía obligación alguna. El caso que ahora resolvemos es aun más fuerte que el que citamos porque en éste el dinero del banco fué dado para la construcción mientras que en el presente el dinero que cobra Sobrinos de Ezquiaga no fué dado para la construcción de la escuela y es reclamado por otros conceptos. Pueden verse también los casos *In re Fowble,* 213 Fed. 676; *Hardway* v. *National Surety Co.,* 211 U. S. 552; y *Henningsen* v. *U. S. Fidelity & Guaranty Co. of Baltimore,* 208 U. S. 404.

Por la razón última expresada *la sentencia apelada debe ser confirmada.*

El Juez Asociado Sr. Texidor no intervino.