MIGUEL F. GIL, demandante y recurrido, *v.* CORPORACIÓN DE RENOVACIÓN URBANA Y VIVIENDA DE PUERTO RICO, demandada y recurrente.

*Número:* R-79-174        *Resuelto:* 11 de abril de 1980

*Jorge Santos Santiago*, abogado de la recurrente; *Federico Rodríguez Pagán*, abogado del recurrido.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

El 16 de octubre de 1963 la Corporación de Renovación Urbana y Vivienda de Puerto Rico (CRUV) celebró un

contrato con el señor Efraín Gómez para la construcción de una obra. La Caribbean Insurance Co. (Caribbean) emitió la fianza usual requerida para asegurar el cumplimiento del contrato por el constructor. El demandante recurrido, Ing. Miguel F. Gil, sirvió a su vez de fiador del contratista Gómez ante Caribbean.

El precio estipulado de la obra ascendió, luego de ciertas modificaciones al contrato, a $94,742.21. De no entregarse la construcción en determinado plazo, el contratista venía obligado a satisfacerle a CRUV la suma de $75.00 por día de demora.

Casi a raíz del comienzo de la obra el contratista empezó a incumplir el convenio, con conocimiento de CRUV. A pesar de estas violaciones, CRUV efectuó pagos al señor Gómez montantes a $68,874.07, suma que representa más del 72 por ciento del costo acordado del proyecto. El contratista sólo había terminado para entonces, y de modo imperfecto, el 26 por ciento de la obra. No fue hasta este momento, el 2 de junio de 1965, que CRUV ejerció su derecho a cancelar el contrato.

Para esta fecha el proyecto tenía 69 días de atraso, sin contar las extensiones concedidas por CRUV, que sumaban 335 días adicionales.

El ingeniero Gil, al hacerse cargo de terminar la obra, acordó con CRUV que no continuaría esta labor hasta corregir los numerosos defectos existentes. No se convino término para esta extensión. El proyecto fue completado por el ingeniero Gil y aceptado por CRUV el 1 de febrero de 1966.

En adición al pago de $68,874.07 al señor Gómez, CRUV les pagó $2,468.14 a dos materialistas. CRUV retuvo el balance de $23,400.00. Se negó a satisfacer suma alguna al ingeniero Gil.

Ante esta negativa, el ingeniero Gil demandó, hace más de doce años, a CRUV y a Caribbean por el balance del contrato, pagos erróneos al señor Gómez y otras partidas. CRUV alegó como defensas afirmativas que no existía relación contractual entre ella y el demandante y que, si acaso, su deuda era para

con Caribbean, la fiadora codemandada, entidad intervenida por el Comisionado de Seguros, que no ha demostrado interés en este pleito. CRUV no requirió daños líquidos en su contestación por cualquier demora atribuible al ingeniero Gil. La obra se entregó por éste, con justificación o sin ella, 312 días después de la fecha estipulada entre CRUV y el señor Gómez.

El Tribunal Superior declaró parcialmente con lugar la demanda. Sostuvo el derecho del ingeniero Gil al balance de lo adeudado, $23,400.00, menos los daños líquidos por la demora incurrida por el señor Gómez hasta la fecha de cancelación del contrato. Modificó la pena moratoria, no obstante, por la cifra de 26 por ciento, equivalente al porcentaje completado de la obra. Ordenó el pago en consecuencia por CRUV al ingeniero Gil de la suma de $19,570.50, más intereses, costas y honorarios de abogado. CRUV ha acudido en alzada ante nos para que se le exima de toda responsabilidad.

Tres temas informan básicamente este pleito: la necesidad de definir la relación entre CRUV y el ingeniero Gil; las obligaciones, si algunas, entre las partes; y la procedencia o no de imponer intereses, costas y honorarios.

1. *La relación entre CRUV y el subfiador.*

El argumento de CRUV de que el recurrido carece de derechos frente a ella es inmeritorio. El ingeniero Gil podía claramente reclamar a CRUV, luego que él asumió el cumplimiento del contrato con el consentimiento de ésta, el pago de cualquier obligación restante. En *Sobrinos de Ezquiaga* v. *Sucn. Hatch*, 38 D.P.R. 599, 603–604 (1928), resolvimos que el fiador que cumple por su fiado se subroga en sus derechos y obligaciones. Véase también: *P.R. Tobacco Mkt. Ass'n.* v. *P.R. & Amer. Ins.*, 100 D.P.R. 387, 397 (1972). Al cumplir por el señor Gómez, el ingeniero Gil podía reclamarle directamente a CRUV la acción que el contratista original hubiese podido ejercer por el balance de lo adeudado en caso de haber él completado la obra. Espín, *Manual de Derecho Civil Español*, 2da ed., Ed. Revista de Derecho Privado,

Madrid, 1961, Vol. III, págs. 648–49. El ingeniero Gil era un subfiador, pero ello no afecta la aplicación de las normas establecidas. El Art. 1722 de nuestro Código Civil, 31 L.P.R.A. sec. 4872, reconoce expresamente la subfianza. Nada impide que el subfiador demande directamente al deudor de su fiado, máxime cuando el deudor acepta que el subfiador sustituya al fiador en el cumplimiento. (¹)

2. *Las obligaciones respectivas.*

CRUV le adeuda al ingeniero Gil el balance del precio acordado de la obra, suma menor a lo gastado por éste en su condición de subfiador. CRUV no puede pretender pagar menos de lo convenido por la obra, aunque debemos determinar las cantidades, si algunas, que deben deducirse a favor de CRUV del balance de $23,400.00, que es lo que resta por satisfacer.

CRUV tiene derecho a que se deduzca del balance la penalidad pactada con el señor Gómez, montante a $5,175.00. (²) El tribunal de instancia redujo esta pena, como hemos visto, por la suma de $1,345.50, equivalente al porcentaje de la obra completado por el contratista original. Esta reducción es improcedente. La facultad moderadora reconocida por el Art. 1108 de nuestro Código Civil, 31 L.P.R.A. sec. 3133, *R. C. Leasing Corp.* v. *Williams Int. Ltd.*, 103 D.P.R. 163 (1974), no se aplica a la pena moratoria, según algunos autores. Espín, *supra*, pág. 335; Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, 1976, T. I, Vol. II, pág. 540; *contra*: J. M. Lobato, *La Cláusula Penal en el Derecho Español*, Ed. Univ. de Navarra, Pamplona, 1974, pág. 175; Sentencia de 14 de marzo de 1922 (Esp.). Estimamos que es concebible la moderación de la pena moratoria cuando ésta es de naturaleza crasamente irrazonable o cuando el retardo se debe a la culpa del propio dueño de la obra, pero los hechos no revelan que estas excepciones se aplican en el caso del señor

---

(¹) Adviértase que en este caso, al entregarse la obra, CRUV se convirtió de acreedora original en deudora.

(²) Esta cantidad corresponde a los 69 días de atraso atribuibles al señor Gómez.

Gómez. La pena pactada de $75.00 diarios no es excesiva ni los actos de CRUV eximieron al contratista original de su obligación de no demorarse en la ejecución del trabajo. Adviértase igualmente que la prohibición del Art. 1107 de nuestro Código Civil, 31 L.P.R.A. sec. 3132, al efecto de que no puede exigirse conjuntamente el cumplimiento de la obligación y la satisfacción de la pena, no es aplicable en el caso de la pena moratoria. Puig Brutau, *loc. cit.*

CRUV también estima que tiene derecho a la penalidad correspondiente al alegado atraso del ingeniero Gil en la entrega de la obra. Sobre este particular debe recordarse que CRUV acordó con el subfiador que éste no continuase la obra hasta después de corregir los defectos existentes. El ingeniero Gil tenía en consecuencia un término razonable a tales fines.

█ El hecho de que CRUV no ejerció una supervisión adecuada del proyecto y que le pagó al señor Gómez el 72 por ciento del precio convenido cuando sólo se había completado el 26 por ciento de la obra perjudicó indudablemente al ingeniero Gil. La proporción de los trabajos a realizarse aumentó en detrimento del subfiador. Determinó el tribunal de instancia:

"Entendemos que de haber CRUV ejercido la supervisión adecuada del proyecto, obligación inherente a su condición de corporación creada con un fin público, la compañía aseguradora en cuyos derechos se subroga el demandante hubiese tenido oportunidad de tomar las medidas necesarias para completar la obra lo más pronto posible y en esta forma minimizar sus daños."

La doctrina establecida en Puerto Rico es que un fiador queda liberado hasta el grado en que las actuaciones del acreedor perjudiquen sus derechos. *Olazábal* v. *U.S. Fidelity, Etc.*, 103 D.P.R. 448, 454 (1975). Véase: Puig Peña, *Compendio de Derecho Civil Español*, 3ra ed., Madrid, T. III, 1976, pág. 118. El tribunal estimó que el perjuicio sufrido por el subfiador fue de tal orden que eliminó todos los posibles daños líquidos a que CRUV pudiese tener derecho contra el ingeniero Gil por atrasos surgidos a partir del momento en que éste

reinició la construcción de la obra. No hallamos base para intervenir con esta determinación.

3. *La procedencia de los intereses, costas y honorarios de abogado.*

El Art. 20 de la Ley Núm. 126 de 6 de mayo de 1938, según enmendado, 17 L.P.R.A. sec. 31, dispone que la Autoridad sobre Hogares, antecesora de CRUV en sus obligaciones y derechos, 17 L.P.R.A. sec. 51, no será requerida "a pagar derechos, impuestos, cargos o costas de clase o naturaleza alguna en relación con la institución o defensa y la subsiguiente prosecución como demandante, demandada o en cualquier otro carácter, en cualquier acción o procedimiento judicial o administrativo. . . ". Hemos resuelto que esta disposición exime a CRUV del pago de costas. *Piñeiro* v. *C.R.U.V.*, 106 D.P.R. 300 (1977). Resolvemos ahora que este lenguaje es suficientemente abarcador para eximir también a CRUV del pago de honorarios de abogado y de los intereses por temeridad, aunque no de los intereses a partir de la sentencia. ([3])

*Se modificará la sentencia para reducir la suma a pagarse por CRUV al ingeniero Gil de $19,570.50 a $18,225.00, más intereses a partir de la sentencia, y eliminar las costas, intereses por temeridad y honorarios y, así modificada, se confirmará.*

---

([3]) Esta cuestión no estaba ante nuestra consideración en *Piñeiro*. En lo que toca a los intereses a partir de la sentencia, no hemos hallado indicio de intención alguna de extenderle a CRUV su inmunidad después de la terminación de los procedimientos. La Regla 44.4(b) de Procedimiento Civil de 1958, vigente a la fecha de la sentencia, no es de aplicación a este caso ya que su alcance se extiende tan solo, al igual que la Regla 44.3 de las Reglas actuales, a las causas de acción surgidas a partir del 26 de marzo de 1967. La demanda en el caso de autos fue radicada en 1966.