ELLIS IRVING RODRÍGUEZ CANCEL y MILAGROS JUSINO TORRES ET AL., demandantes y recurridos, *v.* AUTORIDAD DE ENERGÍA ELÉCTRICA, demandada y recurrente.

*Número:* R-83-462 *Resuelto:* 10 de junio de 1985

*Alberto Picó*, de *Brown, Newson & Córdova*, abogado de la parte recurrente; *César A. Hernández Colón*, abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

En la madrugada del día 5 de enero de 1980 se desató un fuego en un poste propiedad de la Autoridad de Energía Eléctrica de Puerto Rico al ocurrir una avería en un equipo de me-

dición de la referida Autoridad instalado en el mencionado poste, el cual estaba situado en el patio del hogar donde residía el Sr. Ellis Irving Rodríguez Cancel y su familia, localizado el mismo en las Parcelas del Barrio Barinas, Yauco, Puerto Rico. Tanto los miembros del cuerpo de bomberos del referido pueblo que acudieron a apagar el incendio como el señor Rodríguez Cancel notificaron de ello a la Autoridad de Energía Eléctrica. Empleados de dicha agencia acudieron al lugar procediendo, alegadamente, a reparar la avería, autorizando a la familia Rodríguez Cancel a regresar a su casa.

Alrededor de las 8:00 A.M. del mencionado día —víspera del Día de Reyes— el menor de doce (12) años de edad Ellis Irving Rodríguez Jusino vino en contacto con un bajante a tierra, que era parte del citado equipo de medición y que había quedado energizado por motivo de la avería ocurrida, recibiendo una fuerte descarga eléctrica.

Testigo de la referida escena fue la Sra. Milagros Jusino Torres, madre del menor Ellis Irving. (¹) Ante los gritos de desesperación de la mencionada dama, vecinos de la familia acudieron al lugar procediendo a llevar al infortunado menor al Hospital de Área de Yauco, de donde posteriormente fue trasladado al Hospital de Damas de Ponce, Puerto Rico. Dada su crítica y delicada condición —agravada por el hecho de sufrir, inclusive, un infarto del miocardio— fue ·atendido en dicha institución hospitalaria por una docena de especialistas en distintas ramas de la medicina, permaneciendo recluido en la misma hasta el día 5 mayo de 1980. Al ser dado de alta, la condición de Ellis Irving era una de total invalidez, tanto desde el punto de vista físico como mental. (²)

---

(¹) El padre del menor accidentado, señor Rodríguez Cancel, había salido de su hogar minutos antes hacia San Juan con el propósito de llevarle a su jefe una casa de muñeca que había construido para las ·hijas de éste como regalo del Día de Reyes.

(²) Condición que, como veremos más adelante, persistía al momento de celebrarse la vista en su fondo del presente caso ante el tribunal de instancia.

A raíz de la ocurrencia del accidente, los padres del menor, a nombre propio y en representación de la sociedad legal de gananciales compuesta por ellos, así como de Ellis Irving y sus tres (3) hermanos, y los abuelos paternos de este último radicaron una demanda en daños y perjuicios contra la Autoridad de Energía Eléctrica ante el Tribunal Superior de Puerto Rico, Sala de Ponce. Luego de varios incidentes procesales, (³) la Autoridad —quien en el comienzo no sólo había negado responsabilidad por el accidente sino que negó la ocurrencia misma de éste— aceptó como un hecho no controvertido la negligencia alegada, quedando limitada la controversia a la determinación y valorización por el tribunal de los daños sufridos por los demandantes.

El tribunal de instancia, (⁴) luego de escuchar la prueba presentada por ambas partes, condenó a la Autoridad de Energía Eléctrica al pago de las siguientes sumas de dinero:

A. Por los sufrimientos y angustias mentales de los padres, abuelos paternos y hermanos del menor accidentado:

1. Ellis Irving Rodríguez Cancel (padre) . $100,000
2. Milagros Jusino Torres (madre) ..... 100,000
3. Ramón Rodríguez Muñiz (abuelo) .... 75,000
4. María Cancel Santiago (abuela) ...... 50,000
5. Yeroly Rodríguez Jusino (hermana) .. 15,000
6. Albert Rodríguez Jusino (hermano) .. 15,000
7. Felipe Rodríguez Jusino (hermano) .. 15,000

B. Por concepto de gastos especiales incurridos por la sociedad legal de gananciales compuesta por los padres del menor ................................. $6,953 (⁵)

---

(³) Entre los que cabe destacar la radicación de una demanda de intervención del Hospital de Damas en cobro de los servicios médico-hospitalarios que le prestara al menor accidentado.

(⁴) Hon. Delia Lugo Bougal, Juez.

(⁵) Dicha suma de dinero ya fue satisfecha por la Autoridad de Energía Eléctrica.

C. Al menor Ellis Irving Rodríguez Jusino:

1. Por las lesiones sufridas y las incapacidades físicas y mentales sufridas a consecuencia de las mismas ............. $200,000

2. Por sus sufrimientos físicos y angustias mentales pasadas, presentes y futuras . 150,000

3. Por la merma permanente en su capacidad para generar ingresos ......... 416,708

En adición a lo anteriormente señalado, el tribunal de instancia estableció un innovador y abarcador plan de rehabilitación bajo la supervisión directa de un médico coordinador, sujeto el mencionado plan a la periódica evaluación del tribunal. El referido facultativo tendría bajo sus órdenes un sinnúmero de médicos especialistas en distintas áreas de la medicina, todo ello con el propósito de "intentar" rehabilitar al menor Ellis Irving Rodríguez Jusino. A esos efectos, la sentencia dictada dispone para que la Autoridad preste "una fianza por la suma de Cien Mil Dólares ($100,000.00), la cual se mantendrá en vigor hasta tanto" el tribunal de instancia determine que "Ellis Irving haya derivado el óptimo beneficio que permita su condición del plan de rehabilitación".

Inconforme con la sentencia dictada, la Autoridad de Energía Eléctrica de Puerto Rico acudió en revisión ante este Tribunal. Expedimos el auto solicitado. En el alegato que radicara la Autoridad, pág. 4, plantea las siguientes "cuestiones":

I—El Tribunal Superior exagera el estado de salud y la incapacidad del menor Ellis Irving.

II—La suma de $416,708.00 concedida por lucro cesante fue fijada a base de criterios erróneos que no son los que repetidamente ha establecido este Hon. Tribunal, y dicha cantidad es además a todas luces exagerada.

III—La indemnización por "lucro cesante" no procede en este caso y la verdadera indemnización deb[e] ser

una suma de dinero por incapacidad física y mental del menor, incluyendo la posible disminución en su capacidad para generar ingresos, y los gastos médicos futuros que puedan anticiparse razonablemente.

IV—El Tribunal recurrido concedió partidas de daños por sufrimientos físicos y angustias mentales al menor y sus familiares que en total ascienden a $520,000.00, cantidad que es exageradamente alta y debe ser reducida por este Hon. Tribunal.

V—La condena adicional impuesta a la Autoridad demandada de sufragar un extenso plan de rehabilitación del menor sin término fijo es impropia y opresiva, y en su lugar los posibles gastos médicos futuros deben ser parte del total de la indemnización a que tenga derecho el menor demandante por incapacidad física y mental.

VI—No procede la condena a esta Autoridad en honorarios de abogados.

VII—El Tribunal Superior erró al aprobar, por concepto de costas, partidas excesivas e irrazonables.

*Señalamientos I y IV*

I. Como es de esperarse en casos en que un ser humano sufre una condición de anoxia cerebral —consecuencia ésta de un paro cardiorespiratorio, producido el mismo por una fuerte descarga eléctrica— el cerebro del menor accidentado resultó damnificado, afectándose tanto sus facultades mentales como las motoras. Sobre ello *no* difieren los testigos peritos presentados tanto por la parte demandante como por la parte demandada. Lo que sostiene y alega la recurrente Autoridad de Energía Eléctrica, mediante su primer señalamiento, es que la determinación que hiciera el tribunal de instancia a los efectos de que las "evaluaciones neurológicas, psiquiátricas y psicológicas que le fueran practicadas a Ellis Irving durante el 1982 revelan una incapacidad total en el presente, tanto por razones físicas como por razones mentales, pero principal-

450

mente por [e]stas últimas"(⁶) es una "inexacta y exagerada"; en otras palabras, su contención es de que la prueba presentada en el presente caso resulta ser insuficiente para sostener la antes transcrita determinación.

■ Dicha determinación, naturalmente, está basada principalmente en la prueba pericial que fuera presentada y admitida durante el proceso celebrado. Sabido es que en lo referente a la evaluación y apreciación de la prueba médica pericial este Tribunal está en la misma posición que los tribunales de primera instancia. *Cruz* v. *Centro Médico de P.R.*, 113 D.P.R. 719 (1983); *Velázquez* v. *Ponce Asphalt*, 113 D.P.R. 39 (1982); *Zambrana* v. *Hospital Santo Asilo de Damas*, 109 D.P.R. 517 (1980).

Un examen detenido y minucioso de toda la prueba presentada en el presente caso —en especial, la de carácter pericial— nos convence de que la determinación que hiciera el tribunal de instancia a los efectos de que el menor accidentado estaba, a la fecha del proceso, total y completamente incapacitado es una que está *ampliamente* sostenida por la referida prueba. Tan permanente e incapacitante, en opinión de los peritos, es el daño sufrido por el referido menor que prácticamente todos ellos están acordes en que las posibilidades de recuperación de Ellis Irving son completamente inciertas, impredecibles e improbables, no importa el tratamiento que se le brinde. Deseamos señalar respecto a este punto, por último, que hemos examinado la película que le fuera tomada al menor mientras éste almorzaba en unión a su familia inmediata en un restaurante público. La misma fue presentada en evidencia por la parte demandada con el propósito aparente de demostrar que la incapacidad del menor no era de la magnitud alegada. A nuestro juicio demuestra todo lo contrario; esto es, un niño que, a pesar de tener conciencia de lo que sucede a su

_____

(⁶)Véase la determinación núm. 4 de la Parte IV de la Sentencia emitida por el tribunal de instancia.

alrededor, ([7]) está condenado a no ser una persona normal el resto de su vida.

■ IV. Como certeramente expresáramos hace algunos años, la gestión judicial de estimación y valoración de daños es una difícil y angustiosa, no existiendo un sistema mecánico que nos permita llegar a un resultado exacto en relación con el cual todas las partes queden satisfechas y complacidas. *Urrutia* v. *A.A.A.*, 103 D.P.R. 643 (1975). El presente caso es un ejemplo vivo de lo anteriormente expresado. ¿Cómo medir y valorizar en términos monetarios el sufrimiento y la desesperación, presente y futura, de un niño de doce años que se da cuenta de que ya no puede, ni podrá, hacer lo que antes con tanta facilidad realizaba y que ahora le resulta difícil comprender lo que antes tan fácilmente captaba y entendía? ¿Qué valor en dinero le vamos a dar al dolor inmenso y desgarrador que días tras días sienten, y sentirán, ese padre y esa madre al tener que enfrentarse a la cruel y dura realidad de un hijo que ya nunca más será el que era y el que pudo haber sido?

■ No hay duda de que en relación con esta difícil y angustiosa labor de estimación de daños, los tribunales de instancia, de ordinario, están en una mejor posición que los tribunales apelativos para evaluar la situación por cuanto son los que tienen contacto directo con la prueba que a esos efectos presenta la parte que los reclama. *Publio Díaz* v. *E.L.A.*, 106 D.P.R. 854 (1978). Ahí la razón para la norma de abstención judicial; esto es, de que este Tribunal no intervendrá con la decisión que a ese respecto emitan los tribunales de instancia a menos que las cuantías concedidas sean ridículamente bajas o exageradamente altas, *Valldejuli Rodríguez* v. *A.A.A.*, 99 D.P.R. 917 (1971), *Urrutia* v. *A.A.A.*, supra, y de que la parte que ante este Tribunal solicita la modificación

---

([7]) Lo cual hace que la situación sea aun, si es que ello es posible, más trágica.

de las sumas concedidas a nivel de instancia viene obligada a demostrar la existencia de las circunstancias que hacen meritorio el que se modifiquen las mismas. *Canales Velázquez* v. *Rosario Quiles*, 107 D.P.R. 757 (1978).

■ A esos efectos, la parte demandada-recurrente nos señala y argumenta que las cuantías concedidas en el presente caso por concepto de angustias y sufrimientos mentales tanto al menor accidentado como a sus padres, abuelos y hermanos son "exageradamente altas", sobre todo, cuando las mismas son comparadas con las cuantías concedidas y aprobadas por este Tribunal en casos "similares" anteriores. Como sabemos, no hay dos casos exactamente iguales; cada caso se distingue por sus propias y variadas circunstancias. Es por ello que —a pesar de que es aconsejable que los tribunales de instancia utilicen como guía o punto de partida las cuantías concedidas por este Tribunal en casos "similares" anteriores— la decisión que se emita en un caso en específico en relación con esta materia no puede ser considerada como precedente obligatorio para otro caso. *Vda. de Silva* v. *Auxilio Mutuo*, 100 D.P.R. 30 (1971); *Baralt* v. *Báez*, 78 D.P.R. 123 (1955).

Si bien es correcto, como señala la parte recurrente, que un análisis de nuestra jurisprudencia demuestra que nunca antes se han concedido sumas de dinero tan elevadas por concepto de sufrimientos y angustias mentales, [8] no es menos cierto que el caso de autos es uno que presenta una situación excepcional en cuanto a la magnitud de los referidos daños. [9]

---

[8] Véanse: *Colón* v. *Municipio de Guayama*, 114 D.P.R. 193 (1983); *Escobar Galarza* v. *Banuchi Pons*, 114 D.P.R. 138 (1983); *Torres Pérez* v. *Medina Torres*, 113 D.P.R. 72 (1982); *Méndez Purcell* v. *A.F.F.*, 110 D.P.R. 130 (1980); *Vda. de Morales* v. *De Jesús Toro*, 107 D.P.R. 826 (1978); *Sánchez* v. *Liberty Mutual Ins. Co.*, 100 D.P.R. 1 (1971); *Rodríguez* v. *N. A. Co. of America*, 96 D.P.R. 874 (1969); *Santiago Cruz* v. *Hernández Andino*, 91 D.P.R. 709 (1965), y *Berenguer López* v. *Gov. Employees Ins. Co.*, 90 D.P.R. 478 (1964).

[9] En adición a estar hospitalizado durante cuatro largos meses, la mayor parte de cuyo período el menor estuvo en estado de coma y durante

Hemos examinado cuidadosamente las determinaciones de hecho que a esos efectos realizara el tribunal de instancia. Las mismas están sostenidas por la prueba presentada. Dichas determinaciones nos llevan a la conclusión de que procede la confirmación de las sumas de dinero concedidas por el tribunal de instancia al menor accidentado[10]) y a los padres[11]) y hermanos[12]) de éste por concepto de sufrimientos y angustias mentales, ya que las mismas no son "exageradamente altas". *Urrutia* v. *A.A.A.*, ante. No así las concedidas a los abuelos del referido menor; en cuanto a éstos, consideramos procedente reducir la suma concedida a Ramón Rodríguez Muñiz (abuelo) de $75,000 a $35,000 y la concedida a María Cancel Santiago (abuela) de $50,000 a $25,000.

*Señalamiento V*

La parte demandada recurrente plantea que la obligación que le impuso el tribunal de instancia de sufragar un plan de rehabilitación —sin término de duración fijo y de costo indeterminado— es una "impropia y opresiva" y que los "gastos médicos futuros deben ser parte del total de la indemnización a que tenga derecho el menor demandante por incapacidad física y mental". A estos últimos efectos, nos cita los casos de *Irizarry* v. *Pueblo*, 75 D.P.R. 786 (1954) y *Corchado* v. *Fernández Carballo*, 88 D.P.R. 100 (1963).

■ Es correcto que nuestra jurisprudencia, en situaciones como la del caso de autos, ha sido a los efectos de tomar en cuenta, o incluir, los posibles gastos médicos futuros en la fi-

---

el cual sufrió un infarto del miocardio, y a las limitaciones físicas y mentales de carácter permanente que sufre dicho menor, la prueba demuestra que a la fecha del proceso el menor presentaba unos severos desórdenes de personalidad que lo habían convertido en una persona sexualmente agresiva habiendo, inclusive, atacado a una prima hermana suya. La prueba pericial presentada señala, adicionalmente, que existen grandes probabilidades que en un futuro el menor desarrolle una condición de epilepsia.

(10) La suma de $150,000.

(11) La suma de $100,000 a cada uno de ellos.

(12) La suma de $15,000 a cada uno de ellos.

jación de la cuantía total de indemnización en dinero que finalmente se le ha concedido al reclamante. Véanse: *Colón v. Gobierno de la Capital*, 62 D.P.R. 25, 36 (1943); *Irizarry v. Pueblo*, supra, pág. 793; *Lafontaine v. Municipio*, 79 D.P.R. 583, 586 (1956); *Acosta Vargas v. Tió*, 87 D.P.R. 262, 280 (1963); *Rodríguez v. N. A. Co. of America*, 96 D.P.R. 874, 878 (1969); *Rivera v. Rivera Rodríguez*, 98 D.P.R. 940, 945 (1970), y *Gallart v. P.R. Telephone Co.*, 100 D.P.R. 128, 130 (1971).

■ No es menos cierto, sin embargo, que bajo las disposiciones del Art. 1802 de nuestro Código Civil, [13] aquel que como consecuencia de sus actos u omisiones culposas o negligentes le causa daños a otro viene obligado *a reparar el daño causado;* que la doctrina nos señala que la reparación puede verificarse de dos formas o maneras, a saber: (a) la reparación natural o reintegración en forma específica, o (b) la indemnización en dinero; que la mencionada primera alternativa, o sea, la de restablecer al perjudicado a la situación en que se hallaba antes de sufrir el daño, constituye la solución ideal; que únicamente debe acudirse a la indemnización en dinero si el restablecimiento de la condición original no es factible, y que la forma en que habrá de efectuarse la reparación la determinarán los tribunales tomando en consideración las características particulares de cada caso. Véanse: J. Castán Tobeñas, *Derecho civil español, común y foral*, 10ma ed., Madrid, Ed. Reus, 1977, T. IV, pág. 917; J. Santos Briz, *Derecho de Daños*, Madrid, Ed. Rev. Der. Privado, 1963, pág. 253; J. Santos Briz, *La Responsabilidad Civil*, 3ra ed., Madrid, Ed. Montecorvo, 1981, pág. 281 *et seq.;* J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1983, T. II, Vol. III, págs. 189–190; A. De Cupis, *El Daño*, 2da ed. (A. Martínez-Sarrión, traductor), Barcelona, Ed. Bosch, 1975, págs. 588, 811, 812 y 826; H., L. Mazeaud y J. Mazeaud,

---

[13] 31 L.P.R.A. sec. 5141.

*Lecciones de Derecho Civil* (L. Alcalá-Zamora, traductor),
Buenos Aires, Eds. Jurídicas Europa-América, 1960, Vol. II,
Parte II, pág. 395 *et seq.;* A. Borrell Maciá, *Responsabilida-
des derivadas de culpa extracontractual civil,* 2da ed., Barce-
lona, Ed. Bosch, 1958, págs. 244–248; C. Rogel Vide, *La res-
ponsabilidad civil extracontractual en el Derecho español,*
Madrid, Ed. Civitas, 1977, pág. 112.

 Ello no obstante, debe reconocerse que la aplicación
de la norma sobre reparación *in natura* resulta en la práctica
de difícil aplicación, lo que ha causado que los tribunales op-
ten en muchas ocasiones por el "camino más fácil" de la in-
demnización en dinero. Como expresara Santos Briz en su
obra *La Responsabilidad Civil, op. cit.,* págs. 285–286, la "difi-
cultad verdadera radica en que en muchos casos no es posible
en supuestos de actos ilícitos extracontractuales una restitu-
ción al estado anterior al daño (lesiones corporales que dejen
secuelas, sufrimientos morales, ganancias frustradas, causas
hipotéticas del daño, etcétera). En estos casos únicamente
tendrá lugar la indemnización en dinero". En adición, debe
mantenerse presente que, de ordinario, las dos alternativas de
reparación de un daño son mutuamente excluyentes. ([14]) Esto
es, que allí donde ocurre la total reparación *in natura,* no cabe
la indemnización en dinero, y, donde se indemniza en dinero
la totalidad del daño sufrido, no procede la reintegración en
forma específica. Como expresa Puig Brutau, el "resarcimien-
to o indemnización pecuniaria consiste en atribuir al perju-
dicado la cantidad de dinero suficiente para compensar su in-
terés perjudicado. *Es como una subrogación real en la que el*

---

([14]) Varios comentaristas, sin embargo, consideran la posibilidad de
que en algunas situaciones el tribunal pueda conceder una "combinación"
de ambas alternativas, en que una sea complemento de la otra. A. De Cupis,
*El Daño,* 2da ed. (A. Martínez-Sarrión, traductor), Barcelona, Ed. Bosch,
1975, pág. 832; J. Puig Brutau, *Fundamentos de Derecho Civil,* Barcelona,
Ed. Bosch, 1983, T. II, Vol. III, pág. 193; C. Rogel Vide, *La responsabili-
dad civil extracontractual en el Derecho español,* Madrid, Ed. Civitas, 1977,
pág. 112.

*dinero ocupará el lugar de los daños y perjuicios sufridos.* Es una atribución pecuniaria que crea una situación patrimonial que equivale a la destruida por el daño causado". ([15]) (Énfasis suplido.) Y es que ello tiene que ser así; de lo contrario, podría haber un "enriquecimiento injusto" por parte del perjudicado. Véanse: De Cupis, *op. cit.*, pág. 753, y H. Brau Del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico,* San Juan, Pubs. J.T.S., 1980, Vol. I, pág. 8-2.

Examinados los hechos del presente caso a la luz de los principios antes enunciados, resulta forzosa la conclusión de que erró el tribunal de instancia al disponer para el establecimiento del mencionado plan de rehabilitación en la sentencia que emitiera. En primer lugar, debemos recordar que el referido tribunal determinó, como cuestión de hecho, que el menor accidentado está total y completamente incapacitado, tanto desde un punto de vista físico como mental. ([16]) Tan es así que dicho tribunal le concedió al referido menor ([17]) por "las lesiones . . . y *las incapacidades físicas y mentales* sufridas a consecuencia de las mismas" (énfasis suplido) la suma de $200,000. ([18]) En otras palabras, el tribunal de instancia entendió procedente el reparar el daño sufrido por el menor accidentado mediante una indemnización en dinero; no era procedente, en su consecuencia, el ordenar adicionalmente la reparación *in natura* del mismo. De Cupis, *op. cit.*, pág. 753. En segundo lugar, en vista de los hechos particulares del presente caso, la indemnización en dinero es la alternativa procedente en el mismo. Recordemos que la prueba pericial fue a

---

([15]) Puig Brutau, *op. cit.*, pág. 191. Véase, en adición, De Cupis, *op. cit.*, pág. 748.

([16]) Determinación de hecho que entendemos está sostenida por la prueba presentada.

([17]) En adición a la suma de $150,000 por sus sufrimientos físicos y angustias mentales; suma que, como vimos, hemos ratificado por no considerarla "exageradamente alta".

([18]) Suma de dinero que, dados los hechos particulares del presente caso, consideramos que es razonable.

los efectos de que las posibilidades de recuperación de Ellis Irving son inciertas, impredecibles e improbables. Ello hace, repetimos, que lo más aconsejable en el presente caso sea el que se le indemnice en dinero la incapacidad que sufre.

■ Resolvemos, en su consecuencia, que a pesar de que en nuestro ordenamiento jurídico no existe barrera alguna para que en un caso apropiado un tribunal pueda disponer que el daño sufrido por el perjudicado, producto el mismo de un acto u omisión culposo o negligente, sea reparado en forma específica o *in natura,* el presente caso no es uno de ellos.

*Señalamientos II y III*

■ Mediante los señalamientos arriba mencionados, la parte recurrente ataca la concesión de la suma de $416,708 al menor accidentado por concepto de "lucro cesante". Este Tribunal recientemente tuvo la oportunidad de expresarse respecto a esta materia en el caso de *Ruiz Santiago* v. *E.L.A.,* 116 D.P.R. 306 (1985). Expresamos en dicho caso —ante la concesión por parte del tribunal de instancia de una suma de dinero por concepto de "lucro cesante" a un menor de edad que advino incapacitado debido a la negligencia del demandado— que cobijándole a los menores "las presunciones de una vida y desarrollo normal", aun aceptando que "estamos en la dimensión de lo conjetural", no hay duda de que "se ha destruido como ser humano su potencial de ingresos", por lo que ante "la alternativa de negar toda compensación, creemos que ese daño —materialmente cierto— debe ser reparado, aun cuando sólo sea en mayor o menor grado de aproximación". Aclaramos que la "compensación no va dirigida a sustituir ingresos —porque no los haya— sino a indemnizar mediante una suma global el potencial frustrado de generarlos ante la realidad de ese daño". A esos efectos enfatizamos que en esta clase de situación no "procede, pues, la aplicación rígida e inflexible de fórmulas matemáticas", enumerando los "factores apropiados" que los tribunales deben tomar en consideración

al conceder la indemnización, en forma de suma global, por el concepto que denominamos "menoscabo del potencial de generar ingresos".

■ En vista de lo anteriormente expresado, procede la eliminación de la suma de $416,708 concedida en el presente caso por el tribunal de instancia al menor accidentado por concepto de lucro cesante. Dicha suma de dinero es el resultado de la aplicación de una fórmula similar a las utilizadas, y aceptadas por este Tribunal, en casos de adultos. La misma no "toma en cuenta el alto grado de especulación que, según hemos reconocido, existe en casos de menores". *Ruiz Santiago* v. *E.L.A.*, ante.

A la luz de lo resuelto en el citado caso de *Ruiz Santiago* v. *E.L.A.*, ante, y en vista de los hechos específicos del presente caso, (19) analizados los mismos tomando en consideración los "factores apropiados" establecidos en la referida decisión, (20) consideramos razonable la concesión de la suma global de $40,000 por concepto del "menoscabo del potencial

---

(19) Ellis Irving Rodríguez Jusino, al momento de la ocurrencia del accidente, contaba con doce años y cuatro meses de edad y cursaba el sexto grado de escuela, siendo el segundo de cuatro hermanos, productos de un matrimonio estable y feliz. Su récord escolar, hasta ese momento, era el de un estudiante promedio. Era un adolescente amigable, alegre, cooperador y cariñoso tanto en la escuela como en su hogar, gozando de perfecta salud. Su gran pasión lo era el deporte de la pelota (*baseball*), contando con gran habilidad para el mismo al extremo de haber recibido varios galardones y distinciones.

En resumen, en palabras del tribunal de instancia, Ellis Irving era "un joven saludable, alegre, cooperador, amistoso, buen hijo y buen hermano, con una capacidad intelectual normal y con una extraordinaria habilidad en la práctica del béisbol". (Determinación de Hecho núm. 7, Parte I.)

(20) Tipo de núcleo familiar, grado de estabilidad del hogar, edad, condición de salud física y mental previa, inteligencia, disposición, educación alcanzada, hábitos de estudio, habilidad en la escuela, talento, intereses específicos, entretenimientos y destrezas desarrolladas, grado de madurez, grado de experiencia, leyes de salario mínimo, promedio de ingresos en las variadas ocupaciones o profesiones prevalecientes, sistemas de retiros o edad promedio de retiro, indicadores de oportunidades para alcanzar destrezas o educación más avanzada; *Ruiz Santiago* v. *E.L.A.*, ante.

de generar ingresos" sufrido por el menor Ellis Irving Rodríguez Jusino.

*Señalamientos VI y VII*

VI. La Autoridad de Energía Eléctrica solicita la eliminación de la condena en honorarios de abogado que le impusiera el tribunal de instancia en el presente caso,[21] alegando, en primer término, que la misma es improcedente como cuestión de derecho en vista de las disposiciones de la Regla 44 de las Reglas de Procedimiento Civil de 1979 y lo resuelto por este Tribunal en *Colondres Vélez* v. *Bayrón Vélez*, 114 D.P.R. 833 (1983). En la alternativa, y como segundo fundamento, plantea que la condena en honorarios no puede sostenerse por cuanto ella no fue temeraria ya que "aceptó" la negligencia alegada por la parte demandante.

A. Es correcto que en el citado caso de *Colondres Vélez* v. *Bayrón Vélez*, resolvimos, en lo pertinente, que sólo pudiendo una parte ser temeraria "una sola vez", al amparo de las disposiciones de la Regla 44.3(b) tanto el Estado Libre Asociado de Puerto Rico como "sus municipios, agencias, instrumentalidades o funcionarios en su carácter oficial" no sólo están exentos de la imposición, por razón de temeridad, de intereses legales en pleitos sobre cobro de dinero y daños y perjuicios, sino también de la imposición de honorarios de abogado en ese tipo de litigios. Alega la Autoridad que siendo ella una "instrumentalidad" del Estado Libre Asociado, la condena en honorarios que se le impusiera es improcedente como cuestión de derecho. No le asiste la razón; veamos por qué:

En primer lugar, si bien es cierto que la Autoridad de Energía Eléctrica es, en el amplio sentido de la palabra, una "instrumentalidad" del Estado Libre Asociado de Puerto Rico, no es menos cierto que ésta en realidad "es una corporación

---

[21] La suma de $25,000.

460

con existencia y personalidad legales separadas y aparte de la del Gobierno y de la de los funcionarios que la controlan". 22 L.P.R.A. sec. 193.(²²) La recurrente es una "entidad pública-privada" por cuanto no obstante ser una corporación pública goza de la estructura corporativa de una privada, funcionando en forma totalmente independiente del Gobierno de Puerto Rico, cf. *Torres Ponce* v. *Jiménez*, 113 D.P.R. 58 (1982), teniendo facultad para "[d]emandar y ser demandada, denunciar y ser denunciada, querellar y defenderse en todos los tribunales". Véase 22 L.P.R.A. sec. 196(e). En otras palabras, posee todos los derechos y deberes de una parte o litigante privado.

■ En segundo lugar, resulta sumamente interesante el hecho de que la Regla 44.4(e) de las Reglas de Procedimiento Civil de 1958 —la regla equivalente a la vigente Regla 44.3(b)— eximía del pago de interés legal por temeridad al Estado Libre Asociado, a sus municipios, sus agencias y a las corporaciones públicas. Su terminología, como hemos visto, fue enmendada en las Reglas de 1979 al *omitirse* la referencia a las corporaciones públicas. Ello, a nuestro juicio, es indicativo de que en opinión del legislador las corporaciones públicas no deben gozar del privilegio de estar exentas del pago de honorarios de abogado y de intereses legales por razón de temeridad. Evidencia adicional de lo antes expresado, por último, lo constituye el hecho de que cuando el legislador ha querido eximir a una "corporación pública" del pago de dichos conceptos, así lo ha dispuesto expresamente. Ese es el caso, a manera de ejemplo, de la Corporación de Renovación Urbana y Vivienda de Puerto Rico. Véase *Gil* v. *C.R.U.V.*, 109 D.P.R. 551, 556 (1980).

B. El segundo fundamento aducido por la Autoridad en

---

(²²) Sec. 3 de la Ley Núm. 83 de 2 de mayo de 1941, Ley Orgánica de la Autoridad de las Fuentes Fluviales de Puerto Rico, antecesora de la aquí recurrente Autoridad de Energía Eléctrica de Puerto Rico. Véase Ley Núm. 57 de mayo 30 de 1979.

apoyo de su contención de que resulta improcedente la condena en honorarios de abogado es igualmente inmeritorio. Si bien es correcto, como expresa la recurrente, que ella aceptó la negligencia que le fuera imputada, dicha aceptación fue con posterioridad a haber negado la misma en la contestación a la demanda que originalmente radicara, en la cual la recurrente, inclusive, negó la ocurrencia misma del accidente. En este sentido, su conducta fue temeraria. *Cf. Raoca Plumbing* v. *Trans World*, 114 D.P.R. 464 (1983). Consideramos, sin embargo, que la suma impuesta por ese concepto debe ser reducida de $25,000 a $10,000.

VII. Mediante el último señalamiento, la Autoridad de Energía Eléctrica cuestiona la aprobación por parte del tribunal sentenciador del memorando de costas radicado por la parte demandante, en específico, las cuantías aprobadas por concepto de honorarios de peritos, tildándolos de "excesivos e irrazonables".

Dicha materia, como es sabido, está regulada por las disposiciones de la Regla 44.1 de las Reglas de Procedimiento Civil de 1979. El propósito de la misma es el resarcir a la parte victoriosa en un litigio los gastos *necesarios* y *razonables* en que tuvo que incurrir con motivo del mismo. *Garriga, Jr.* v. *Tribunal Superior*, 88 D.P.R. 245 (1963); *Ferrer Delgado* v. *Tribunal Superior*, 101 D.P.R. 516 (1973). Relativo al caso de honorarios de peritos, su compensación, como gastos, no es automática; el tribunal al pasar juicio sobre si procede o no el pago de dichos honorarios, tendrá que evaluar su naturaleza y utilidad a la luz de los hechos particulares del caso ante su consideración, teniendo la parte que los reclama el deber de demostrar que el testimonio pericial presentado era necesario para que prevaleciera su teoría. *Meléndez* v. *Levitt & Sons of P.R.*, 104 D.P.R. 797 (1976); *Toppel* v. *Toppel*, 114 D.P.R. 16 (1983).

Examinados los honorarios concedidos a los peritos en el

presente caso a la luz de los principios mencionados, somos del criterio que el tribunal de instancia no erró al conceder los mismos.

Por los fundamentos antes expresados, *se modifica la sentencia dictada en el presente caso por el Tribunal Superior de Puerto Rico, Sala de Ponce, de acuerdo con lo arriba expresado, y así modificada se confirma la misma.*