# 99 DTA 147

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL IV DE AGUADILLA Y MAYAGUEZ**
**PANEL I**

BLANCA RIVERA JOURNETT
Demandante-Apelada

v.

EMPRESAS VILLAMIL H/N/C QUALITY CAR WASH;
GENERAL ACCIDENT Y FULANO DE TAL
Demandados-Apelantes

Núm. KLAN-98-01227

San Juan, Puerto Rico, a 7 de mayo de 1999

Panel integrado por su Presidenta, la Juez López Vilanova,
el Juez Córdova Arone y la Juez Feliciano Acevedo

Feliciano Acevedo, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

Mediante el presente recurso apelativo Empresas Villamil (Empresas), haciendo negocios como Quality Car Wash (Quality), solicita la modificación de la sentencia que fuera dictada por el Tribunal de Primera Instancia, Sala Superior de Mayaguez, el 1 de julio de 1998. En la misma se le ordena indemnizar en daños y perjuicios, por la cantidad de $10,250 a la parte apelada, señora Blanca Rivera Journett (Rivera).

Específicamente, Empresas alega que la referida cuantía es una excesiva e irrazonable, no conforme a los daños que fueron reclamados y probados durante el juicio.

Por los fundamentos que exponemos más adelante modificamos la sentencia apelada a los fines de reducir la indemnización concedida a cinco mil dólares ($5,000).

### II

Surgen de los documentos que obran en autos y del dictamen emitido por el foro sentenciador los siguientes hechos.

El 6 de agosto de 1997, Rivera, quien es maestra de profesión y vecina de Mayaguez, acudió a Quality a los fines de darle un lavado mecánico a su vehículo, una guagua Explorer de 1991. En el referido sistema el auto entra a una especie de túnel donde es lavado y secado por ciertos instrumentos, y transportado automáticamente sin ninguna otra intervención del conductor. Una vez el vehículo de Rivera llegó al final del lavado, un rolo gigantesco para secarlo se encajó sobre el cristal del mismo y en vez de continuar el recorrido, comenzó a ejercer presión sobre éste. A Rivera le dio mucho miedo ver que el aparato mecánico no funcionaba y que el rolo presionando el cristal hacia dentro amenazaba su seguridad. Presa del pánico, comenzó a tocar la bocina para que vinieran a ayudarla. Dos empleados del negocio acudieron, movieron el rolo y liberaron así la guagua. El cristal reflejaba un hundimiento del tamaño de una bola de baloncesto.

Aunque no recibió daño físico como tal, Rivera estaba muy nerviosa y comenzó a llorar en el piso. Exigió ver al gerente y fue llevada a la oficina, donde se preparó un informe de lo que había sucedido. Luego se trasladó hasta su hogar en su vehículo. Esa noche fue a la clínica Yaguez, en compañía de su hijo, donde le dieron unas pastillas para controlar el dolor en el cuerpo y en la cabeza y le colocaron una *"cuellera"*.

Según determinó probado el Tribunal, Rivera visitó posteriormente al Dr. Carlos Ramírez Cancel, sicólogo, puesto que confrontaba problemas para dormir y comenzó a padecer la misma pesadilla frecuentemente. Esto último tuvo lugar por dos meses. Rivera no se atrevía a tomar elevadores por temor a la sensación de pánico por el encerramiento. La demandante tampoco condujo su vehículo de motor por un (1) mes y dependía totalmente de su hijo para transportarse a los diferentes lugares.

Las partes estipularon que el valor de la reparación del cristal era de doscientos cincuenta dólares ($250.00). Al día del juicio en cuanto a los daños y perjuicios ocasionados, los demandados no habían pagado dicha reparación a pesar de que habían aceptado su negligencia.

Después del accidente Rivera no confrontó problemas con los estudiantes, maestros y padres durante su desempeño como maestra.

Conforme a la evaluación realizada por el Dr. Rivera Cancel, la cual fue admitida en evidencia, el evento de la máquina había causado un serio problema de ansiedad en Rivera, del cual todavía reflejaba rasgos un año después. Esta había recibido tratamiento de psicoterapia (de 10 a 12 veces) pero no había requerido el uso de medicamentos.

Igualmente fue presentado el informe suscrito el 3 de mayo de 1998 por el Dr. Fernando Cabrera, hijo, perito siquiatra de la parte apelante. Según detalló, Rivera decía sentirse muy afectada emocionalmente por el incidente ocurrido en Quality. No obstante, el galeno concluyó que ésta no presentaba síntomas de estrés postraumático y que su condición y su nivel de funcionamiento, capacidad vocacional o social no se encontraban afectados. Destacó que desde que Rivera sufrió el accidente no había tenido que recurrir a tratamiento siquiátrico y/o tampoco tomar medicinas para los nervios.

Tras Rivera reclamar de Empresas daños ascendentes a $350,000 y el Tribunal haberse limitado a concederle $10,250, Empresas ha acudido ante nos. En su único señalamiento de error, plantea que erró dicho foro al estimar los daños sufridos por Rivera, específicamente los relacionados a sufrimientos y angustias mentales, razón por la cual, a su entender, se debe reducir la cuantía otorgada.

Tras un examen objetivo y minucioso del expediente, concluimos que le asiste la razón. Veamos.

### III
La responsabilidad civil es precisamente el deber de resarcir al damnificado al otorgarle un valor económico equivalente a los daños sufridos aunque los mismos sean intangibles o no pecuniarios, tal y como lo son el sufrimiento, las angustias mentales y los daños emocionales. *García Pagán v. Shiley Caribbean, Etc.,* 122 D.P.R. 193, 205 (1988). Es como una subrogación real en que el dinero ocupará el lugar de los daños y perjuicios sufridos, y una atribución pecuniaria que crea una situación patrimonial que equivale a la destruida por el daño causado. *Id.*

El derecho a ser compensado por daños no puede derrotarse meramente por el carácter especulativo en que alguna medida supone el cómputo de daños. *Odriozola v. Cosmetic Dist. Corp.,* 116 D.P.R. 485 (1985). No obstante, al medir los daños en un caso, el juzgador debe hacerlo sobre una estricta base de correspondencia con la prueba, procurando siempre que la indemnización no se convierta en una industria y no se lesione la economía. *Atiles v. McClure,* 87 D.P.R. 865 (1963). Este deber de los jueces tiene el propósito de conservar el sentido remediador y no punitivo que encarna el artículo 1802 del Código Civil. *Vda. de Valentín v. E.L.A.,* 84 D. P.R. 112 (1972). La función de estimación y valorización de los daños físicos y mentales descansa en el juicio discrecional, sereno, prudente y razonable del juzgador de instancia. Un tribunal apelativo deberá, de ordinario, respetar la valorización realizada, ya que el foro de instancia se encuentra en mejor posición para evaluar la

prueba presentada. No obstante, en caso de que el foro apelativo entienda que la cuantía adjudicada en instancia resulta ser exagerada o muy baja, podría éste intervenir y ajustarla. *Rosado Feliciano v. Supermercado Mr. Special*, ___ D.P.R. ___ (1996), **96 J.T.S. 6,** a la pág. 583. La parte que solicita la modificación de los daños viene obligada a demostrar la existencia de las circunstancias que hacen meritorio el que se modifiquen las mismas. *Rodríguez Cancel v. E.L.A.*, 116 D.P.R. 443, 451 (1985).

## IV

En el caso de marras, si bien determinó el tribunal sentenciador que el incidente del rolo o el *"blower"*, el cual pareció extenderse por muy pocos segundos, provocó un gran pánico en Rivera y le llevó a tener pesadillas y a desarrollar un persistente problema de ansiedad y nerviosismo, lo cierto es que su condición no llenó los criterios propios del estrés postraumático (véase al respecto el informe rendido por el Dr. Cabrera, anejo I página 26 del escrito de apelación).

Aunque Rivera fue objeto de psicoterapia, su estado emocional no le requirió ser hospitalizada, ni tomar medicamentos. Cabe destacar que tampoco se vio afectada en momento alguno en el desempeño de su trabajo ni en su relación con los colegas y los estudiantes. Conforme al examen practicado por el siquiatra, su nivel de funcionamiento, capacidad vocacional y/o social no se afectaron.

Tomando en cuenta todas estas circunstancias resolvemos que la cuantía otorgada por el Tribunal de Primera Instancia a Rivera, ascendente a diez mil doscientos cincuenta dólares ($10,250) resulta ser más que compensatoria una punitiva, por lo que reducimos la misma a $5,000.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General