# 98 DTA 134

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL V DE PONCE Y AIBONITO

ABIGAIL RIVERA PACHECO, SU ESPOSO FRANCISCO ZAYAS ORTIZ, Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS
Demandantes-Apelados

v.

ASOCIACION DE CONDOMINES PARRA, COMPAÑIA DE MANTENIMIENTO X, Y AMERICAN INTERNATIONAL INSURANCE, CO.
Demandados-Apelantes

Núm. KLAN-97-00924

San Juan, Puerto Rico, a 19 de marzo de 1998

Panel integrado por su presidente el Juez Negrón Soto y los Jueces Aponte Jiménez y Segarra Olivero

Negrón Soto, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Los demandados-apelantes, la Asociación de Condómines del Edificio Parra y la American International Insurance Co., presentaron este recurso de apelación, solicitando que revisemos una sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Ponce, mediante la cual se declaró con lugar una demanda de daños y perjuicios incoada por los demandantes-apelados, Abigail Rivera Pacheco, su esposo Francisco Zayas Ortiz y la Sociedad Legal de Gananciales compuesta por ambos.

Modificamos la sentencia apelada para eliminar la partida que condena a los demandados-apelantes al pago de $1,500.00 en concepto de honorarios de abogado. Veamos los hechos pertinentes.

### I

El 20 de agosto de 1993, la demandante-apelada, Abigail Rivera Pacheco, en adelante la Sra. Rivera, fue al Edificio Parra, ubicado en Ponce, para asistir a una cita médica en la oficina de un ginecólogo. Allí se encontró con Migdalia Quiñones Rodríguez, en lo sucesivo la Sra. Quiñones. Ambas tomaron el elevador del edificio. Alrededor de las 11:15 a.m., al llegar al cuarto piso, la Sra. Rivera salió del ascensor, resbaló en una sustancia y cayó al suelo, boca abajo y con el peso de su cuerpo sobre el lado izquierdo. Al caer al suelo, se le mojaron la blusa y el pantalón que llevaba puestos. Además, sintió algo mojado en el suelo y percibió olor a detergente.

Al momento de ocurrir la caída de la Sra. Rivera, se encontraban en el área dos empleados de mantenimiento del edificio. Estos habían comenzado sus labores en el cuarto piso, alrededor de las

11:00 a.m. Uno de ellos, Walberto Franco, en adelante Franco, limpiaba las ventanas que quedaban en frente del ascensor, a una distancia de tres a cuatro pies del ascensor. El otro, Andrés Almodóvar, en lo sucesivo Almodóvar, limpiaba una fuente de agua, localizada a la izquierda y cerca del ascensor, en la esquina del pasillo.

Para Franco era su primer día de trabajo como empleado de mantenimiento. Era la primera vez que trabajaba en estos menesteres. Almodóvar se encargó de darle entrenamiento sobre cómo limpiar las ventanas, procediendo, aquél entonces, a limpiarlas por sí sólo.

Según surge de las determinaciones de hechos formuladas por el juez de instancia y de la exposición estipulada de la prueba, para limpiar las ventanas se utilizaba un limpiador líquido en un envase roceador. Almodóvar testificó en la vista celebrada que dicho líquido era volátil. Describió que en el pasillo que está frente al ascensor hay ocho ventanas y que éstas se roceaban una a una. Al rocear cada ventana, ésta se cerraba, permaneciendo las restantes abiertas. Durante el contrainterrogatorio se le preguntó si al rocear el líquido, éste caía al suelo. Almodóvar contestó que podía ser.

La Sra. Quiñones ayudó a levantar a la Sra. Rivera y la llevó, sosteniéndola, hasta la oficina del ginecólogo, la cual queda de frente al pasillo. Luego de ayudarla a sentarse, ambas observaron, a través de los cristales de la oficina, que los empleados de mantenimiento estaban limpiando el área donde se cayó la Sra. Rivera y que pusieron un aviso de precaución que decía *"resbala mojado"*.

Posteriormente la secretaria de la oficina de administración del edificio llegó a la oficina del ginecólogo. Llevó a la Sra. Rivera en silla de ruedas a la Sala de Emergencias del Hospital de Damas, la cual queda contigua al Edificio Parra. Como consecuencia de las lesiones físicas sufridas al caerse, la Sra. Rivera acudió a varios médicos con el fin de recibir tratamiento.

Según surge de la determinación de hechos número 9, las lesiones sufridas por la Sra. Rivera pueden resumirse de la siguiente manera: trauma en codo, mano, rodilla y tobillo izquierdos. Esta recuperó en cuanto al trauma del codo y de la mano, pero *"continuó sufriendo de dolores y molestias en su rodilla y tobillo, en los que sufrió un esguince, para los cuales tuvo que recibir tratamiento médico durante un tiempo prolongado"*. En la rodilla y el tobillo izquierdo, sufrió un impedimento o limitación de las funciones de un 5% en cada uno, lo cual se reflejaría en un 2% de impedimento de las funciones generales, en cada caso.

El 16 de mayo de 1994, los demandantes-apelados presentaron una demanda en daños y perjuicios en contra de la Asociación de Condómines del Edificio Parra, la compañía aseguradora del edificio, American International Insurance Company of Puerto Rico, Inc., y una compañía de mantenimiento de nombre desconocido, por los daños sufridos como consecuencia de la caída de la Sra. Rivera.

La Asociación de Condómines y su Aseguradora contestaron la demanda, negando responsabilidad por dicha caída. Incoaron una reconvención en contra de la Sra. Rivera alegando que la caída se debió a la única y exclusiva negligencia de ella. Además, alegaron que si los demandados tuvieran que pagar cualquier suma de dinero a los demás demandantes, entiéndase el esposo de Abigail Rivera Pacheco y la sociedad legal de gananciales compuesta por ambos, entonces la Sra. Rivera vendría obligada a indemnizarlo pagarle a los demandados-apelados dichas partidas, o en la alternativa ella le era directamente responsable a los otros co-demandantes por los daños sufridos. Posteriormente los demandantes-apelados presentaron ante el tribunal *a quo* una moción informativa y de oferta de transacción por la suma de $45,000.00.

Celebrada la vista del caso en su fondo, el Tribunal de Primera Instancia declaró con lugar la demanda presentada. Dicho Foro consideró desistida la acción en cuanto a la compañía de mantenimiento, debido a que luego de haberse expedido su emplazamiento nunca fue emplazada. El Tribunal apelado encontró probados todos los elementos de la causa de acción. Estimó los daños físicos y los sufrimientos y angustias mentales de la Sra. Rivera en la suma de $15,000.00. A su vez, valoró las angustias mentales sufridas por el codemandante-apelado como resultado de la condición que sufrió su esposa luego de la caída, en $3,000.00 y condenó a los demandados-apelantes al pago de $1,500.00 en concepto de honorarios de abogados. Los demandados-apelantes presentaron

oportunamente una solicitud de determinaciones de hechos adicionales, la cual fue denegada.

Los demandados-apelantes recurren ante nos. Le imputan al Tribunal apelado haber errado al: (i) determinar que se probaron los elementos de la causa de acción; (ii) concluir que probablemente la brisa que entraba por las ventanas transportó partículas del líquido limpiador hasta el área de la salida del ascensor; (iii) estimar la cuantía de la indemnización por los daños sufridos por los demandantes-apelados; y (iv) al imponerle una suma por honorarios de abogados.

## II

Por estar estrechamente relacionados, discutiremos en conjunto los señalamientos de error primero y segundo. En esencia en éstos, los demandados-apelantes cuestionan la apreciación de la prueba realizada por el Tribunal *a quo*. Sostienen que no se probaron los elementos de la causa de acción presentada por los demandantes-apelados. Examinemos el derecho aplicable al caso de autos. El Artículo 1802 del Código Civil, 31 L.P.R.A. sec. 5141, impone responsabilidad al que causa daño a otro, ya sea mediante acción u omisión en la que intervenga culpa o negligencia. *Laureano Pérez v. Soto,* **96 J.T.S. 88.**

Para imponer responsabilidad civil bajo el Artículo 1802, *supra*, es necesario que concurran tres requisitos o elementos, a saber: (1) que se establezca la realidad del daño sufrido; (2) que exista la correspondiente relación causal entre el daño y la acción u omisión de otra persona; y (3) que dicho acto u omisión sea culposo o negligente. *Tormos Arroyo v. Departamento de Instrucción Pública,* **96 J.T.S. 34;** *Elba A.B. v. Universidad de Puerto Rico,* 125 D.P.R. 294 (1990).

En los casos en los que se le imputa responsabilidad por daños y perjuicios a los dueños de establecimientos abiertos al público con el objeto de llevar a cabo operaciones comerciales para su propio beneficio, es imperativo que la parte demandante pruebe la concurrencia de dos requisitos, a saber: (1) la existencia de una condición peligrosa y (2) que el dueño del establecimiento tenía o debió haber tenido conocimiento de la existencia de dicha condición de peligrosidad. *Cotto v. C.M. Insurance,* 116 D.P.R. 644 (1985).

Apliquemos el derecho antes expuesto a los hechos del caso. El Foro apelado concluyó que *"el piso estaba mojado con una sustancia jabonosa, resbaladiza, y que ésta posiblemente procedía del líquido roceador con que se limpiaban las ventanas"*. Apoyó dicha conclusión en el hecho de que se usaba una sustancia líquida volátil para limpiar las ventanas y que Almodóvar admitió que podía caer dicho líquido al suelo. El juez de instancia confirió entero crédito a los testimonios de las Sras. Rivera y Quiñones, a los efectos de que el piso estaba mojado y que la ropa de la Sra. Rivera quedó mojada luego de la caída y de que pudieron observar a través de los cristales de la oficina del ginecólogo a los empleados de mantenimiento limpiando el suelo y poniendo un rótulo de precaución.

Además, el Tribunal apelado consideró en sus determinaciones de hechos la circunstancia de que debido a que el empleado que limpiaba las ventanas era nuevo en esos menesteres era probable *"que éste no tuviese la medida y el control de cuánto líquido podía rocear y a qué distancia para evitar el esparcimiento del líquido fuera de las ventanas"*. Por lo tanto, concluyó dicho Foro que el accidente que sufrió la Sra. Rivera se debió a la falta de diligencia del empleado de mantenimiento que estaba limpiando las ventanas, el cual no tomó las medidas necesarias para evitar que el líquido que usaba cayera al suelo, creando así una condición de peligrosidad.

El Foro de instancia tampoco creyó los testimonios de los empleados de mantenimiento del edificio, a los efectos de que inmediatamente después que la Sra. Quiñones levantó a la Sra. Rivera del suelo, verificaron que el área donde ocurrió la caída estaba libre de objetos, sustancias o materia alguna que pudiera haber provocado la caída.

Es norma general en derecho que los tribunales de instancia están en mejor posición que los foros apelativos para aquilatar la prueba testifical que se aporta en un juicio. El alcance de la revisión judicial sobre cuestiones de hechos está regulado por lo dispuesto en la Regla 43.2 de las de Procedimiento Civil, que en lo pertinente dispone lo siguiente:

*"...Las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que*

71

*sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos...".32 L.P.R.A., Ap. III.*

Por ello nuestro Tribunal Supremo ha establecido que no debe *"...intervenir con las determinaciones de hechos que hace un tribunal de instancia"* y *"...sustituir su...criterio por el del juzgador ante quien declararon los testigos y quien tuvo la oportunidad de verlos declarar y apreciar su demeanor, Ramos Acosta v. Caparra Dairy, Inc., 113 D.P.R. 357 (1982), a menos que se demuestre que dicho foro actuó con pasión, prejuicio o parcialidad". Vélez v. Srio de Justicia,* 115 D.P.R. 533, 545 (1984). Así, la apreciación de la prueba efectuada por el Tribunal de Primera Instancia merece gran deferencia por lo que sólo en ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto, los tribunales de apelaciones no intervienen en cuanto al trasfondo fáctico determinado en instancia. *Pérez Cruz v. Hosp. La Concepción,* 115 D.P.R. 721 (1984); *Sánchez Rodríguez v. López Jiménez,* 116 D.P.R. 172, 181 (1985).

La existencia de prueba conflictiva no significa que el Tribunal de Primera Instancia haya cometido un error manifiesto que amerite nuestra intervención en la apreciación de la prueba. A esos efectos, en *López Vicil v. ITT Intermedia Inc.,* **97 J.T.S., 42,** pág. 383, se dice que:

*"La mera existencia de prueba conflictiva no constituye error manifiesto. Por el contrario, reiteradamente hemos resuelto que cuando existe conflicto entre las pruebas, corresponde precisamente al juzgador de los hechos dirimir ese conflicto."*

En el presente caso, el tribunal apelado le dio credibilidad a la prueba presentada por los demandantes-apelados. Este Foro no encuentra evidencia en los autos que demuestre que el Tribunal de Primera Instancia haya actuado movido por pasión, prejuicio o parcialidad o que haya cometido un error manifiesto en sus determinaciones. Por el contrario, éstas encuentran apoyo en la prueba desfilada en la vista en su fondo, según surge de la exposición estipulada de la prueba. En consecuencia, es forzoso concluir que los apelantes no nos han puesto en posición de intervenir con esas determinaciones.

Recapitulando, los demandantes-apelados probaron la negligencia imputada a satisfacción del tribunal apelado, a saber: la existencia de la condición peligrosa, que el piso estaba mojado con una sustancia jabonosa y resbaladiza; y en segundo lugar, según se desprende de la sentencia recurrida así como de la exposición estipulada de la prueba, Almodóvar expresó la posibilidad de que al rocear el líquido en las ventanas, éste cayera al suelo. Estas expresiones demuestran que podía imputársele a los demandados-apelantes el conocimiento de la condición peligrosa.

### III
Procedamos a discutir el tercer error planteado. Los apelantes sostienen que la cuantía concedida como indemnización a los demandantes-apelados es una excesiva y desproporcionada.

La estimación y valoración de los daños es una tarea difícil y angustiosa. Al llevar a cabo esta tarea, los tribunales de instancia están en mejor posición que los foros apelativos para evaluar la situación pues tienen contacto directo con la prueba y, por lo tanto, estos últimos no intervendrán con la decisión que emitan los primeros a menos que las cuantías otorgadas sean exageradamente altas o ridículamente bajas. *Torres Solís v. A.E.E.,* **94 J.T.S. 89,** pág. 12039. La persona que solicita la modificación de la cuantía de los daños tiene que demostrar la existencia de circunstancias que la justifiquen. *Rodríguez Cancel v. A.E.E.,* 116 D.P.R. 443, 451 (1985). Es sabido que en la valorización de los daños se debe utilizar como punto de partida el valor que el Tribunal Supremo ha considerado adecuado en casos similares. *Escobar Galarza v. Banuchi Pons,* 114 D.P.R. 138, 148 (1983).

Aplicada esta norma de derecho a los daños físicos y a los sufrimientos y angustias mentales que sufrieron los demandantes-apelados, ciertamente no hay base alguna para intervenir con las cuantías concedidas a éstos. Dichas sumas no son excesivas. Además, los apelantes no pusieron a este Foro apelativo en posición de determinar que el Tribunal de Primera Instancia abusó de su discreción.

## IV

Nos resta considerar si erró el Tribunal de Primera Instancia al condenar a los demandados-apelantes al pago de $1,500.00 por concepto de honorarios de abogado.

La Regla 44.1 (d) de las de Procedimiento Civil, 32 L.P.R.A Ap. III, dispone que:

*"[e]n caso que cualquier parte haya procedido con temeridad, el tribunal deberá imponerle en su sentencia el pago de una suma por concepto de honorarios de abogado."*

En *Fernández v. San Juan Cement Co., Inc.*, 118 D.P.R. 713, 718-719 (1987), se resolvió que:

*"El propósito principal de autorizar la imposición de honorarios de abogado en casos de temeridad, es la de establecer una penalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito, Soto v. Lugo, 76 D.P.R. 444 (1954). Hemos señalado que la acción que amerita la condena de honorarios de abogado es cualquiera que haga necesario un pleito que se pudo evitar, McCormick v. Vallés, 55 D.P.R. 226, 233 (1930); que lo prolongue innecesariamente, Stella v. Bonilla, supra; Ortiz v. Viera, 59 D.P.R. 358 (1941), o que produzca la necesidad de que otra parte incurra en gestiones evitables, San Antonio v. Jiménez & Fernández, Sucs., 63 D.P.R. 215, 220 (1944). Como ejemplo hemos resuelto que existe temeridad si el demandado contesta una demanda y niega su responsabilidad total, aunque la acepte posteriormente, Rodríguez Cancel v. A.E.E., 116 D.P.R. 443 (1985); si se defiende injustificadamente de la acción, Montañez Cruz v. Metropolitan Cons. Corp., supra; si la parte demandada en efecto cree que la cantidad reclamada es exagerada y esa es la única razón que tiene para oponerse a las peticiones del demandante y no admite francamente su responsabilidad limitando la controversia a la fijación de la cuantía a ser concedida, Mercado v. American Railroad Co., 61 D.P.R. 228 (1943); Reyes v. Aponte, 60 D.P.R. 890 (1942)."*

Como dijimos en *Pérez Cruz v. Hosp. La Concepción*, 115 D.P.R. 721, 739-740 (1984), si *"[s]e arriesgó a litigar un caso del que se desprendía prima facie la negligencia; debe asumir, pues, la responsabilidad por sus actos. Negar un hecho que le consta es cierto al que hace la alegación también constituye temeridad. Abréu Román v. Rivera Santos, 92 D.P.R. 325 (1965)."* (Notas al calce omitidas).

Además, se ha resuelto que:

*"No incurre en temeridad una parte que litiga una cuestión que tiene acogida y adjudicada por primera vez en la jurisprudencia patria, Brea v. Pardo, 113 D.P.R. 217, 226 (1982), ni cuando el caso es complejo en el cual se hacen planteamientos novedosos".* Elba A.B.M. v. U.P.R., 125 D.P.R. 294, 330 (1990).

Dicha determinación depende de la discreción del Tribunal sentenciador. *Raoca Plumbing v. Trans World*, 114 D.P.R. 464 (1983).

Una vez se determina tal temeridad, el Tribunal tiene la obligación de imponer en la sentencia el pago de una suma por concepto de honorarios de abogado. *Vega v. Luna Torres*, 126 D.P.R. 370 (1990). Como se dijo en *Santos Bermúdez v. Texaco P.R. Inc.*, 123 D.P.R. 351, 356-357 (1989):

*"[a]l fijar la cuantía de honorarios de abogado [el tribunal] tomar[á] en consideración [factores tales como (1) el grado de temeridad que ha existido [;(2)] la naturaleza del procedimiento [;(3)] los esfuerzos y actividad profesional que haya tenido que desplegarse [, y (4)] la habilidad y reputación de los abogados",* Bernier, *op. cit.* , pág. 33. Es decir [s]u cuantificación no tiene que coincidir matemáticamente con el valor real de los servicios prestados o pagados, sino con aquella suma que en consideración al grado de temeridad y demás circunstancias el tribunal concluye que representa razonablemente el valor de esos servicios. *Asociación de Condómines v. Trelles Reyes*, 120 D.P.R. 574, 579 (1988).

Aplicados estos principios a los hechos del caso de autos, concluimos que los demandados-apelan-

tes no incurrieron en conducta tal que pueda considerarse temeraria. No hay indicio alguno de terquedad, obstinación, contumacia e insistencia en actitud desprovista de fundamentos, que obligara a la Sra. Rivera, innecesariamente, a asumir las molestias, gastos, trabajos e inconveniencias del pleito de marras. Los demandados-apelantes estaban ante un caso donde la prueba de la negligencia no era clara. Además, los demandantes-apelados le habían comunicado una oferta de transacción por la suma de $45,000.00, la cual era exagerada. Ante esas circunstancias, los demandados-apelantes no tenían otra alternativa que no fuera ir al juicio en los méritos para que el Tribunal dirimiera la controversia. Por lo tanto, procede eliminar la partida de honorarios de abogado a la que fueron condenados los demandados-apelantes.

## V

En consideración a lo antes expresado, se modifica la sentencia apelada para eliminar la partida de $1,500.00 impuesta a los demandados-apelantes en concepto de honorarios de abogado y así modificada se confirma.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General