# 2009 DTA 106

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE PONCE
PANEL VII**

VANGUARDIA DE TRABAJADORES UNIDOS DE PUERTO RICO, *ET ALS*
Peticionarios

v.

CORPORACIÓN AZUCARERA DE PUERTO RICO
Recurrida

Núm. KLCE-2009-00522

San Juan, Puerto Rico, a 13 de julio de 2009

Panel integrado por su Presidente, el Juez López Feliciano,
y los Jueces Hernández Serrano y Rosario Villanueva

Hernández Serrano, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nosotros Vanguardia de Trabajadores Unidos de Puerto Rico (Vanguardia), mediante recurso de *certiorari* en el que nos solicita que revoquemos una orden emitida el 12 de marzo de 2009, notificada el 16 de marzo de 2009 por el Tribunal de Primera Instancia, Sala Superior de Ponce (TPI).

Examinado el expediente ante nuestra consideración, así como el derecho aplicable, se expide el auto solicitado, se revoca el dictamen recurrido y se devuelve el caso al TPI.

**I**

Con el propósito de comprender con mayor claridad la controversia ante nuestra consideración, relataremos el cuadro fáctico *general* del caso de marras según surge de la Sentencia emitida por este Tribunal el 23 de abril de 2008 en el caso núm. KLAN-2007-00973.

El 9 de diciembre de 2003, Vanguardia de Trabajadores Unidos de Puerto Rico (Vanguardia), en representación de 20 ex-empleados de la Corporación Azucarera de Puerto Rico (Corporación), presentó ante el Tribunal de Primera Instancia, Sala Superior de Ponce (TPI), una demanda al amparo del procedimiento sumario dispuesto en la Ley Núm. 2 del 17 de octubre de 1961 (Ley Núm. 2) sobre reclamación por compensación salarial. Adujo que suscribió un convenio colectivo con la Corporación en el cual, en lo pertinente, se creó un Plan de Retiro por Años de Servicio o Por Edad a beneficio de los ex-empleados. Alegó que la Corporación no les había pagado a éstos el dinero acumulado por concepto de dicho plan, el cual arguyeron totalizaba ciento setenta y siete mil dólares ($177,000). Por ello, reclamó dicha cantidad. Además, exigió como penalidad el pago de la doble compensación dispuesta en las leyes laborales. Por último, solicitó se le impusiera a la Corporación el pago de una cuantía por concepto de honorarios de abogado no menor del veinticinco por ciento (25%) de la cantidad total que se le otorgara en compensación y penalidad.

Debido a que la Corporación no contestó la demanda dentro del término dispuesto por la Ley Núm. 2, Vanguardia solicitó se le anotara la rebeldía. Por su parte, la Corporación se opuso y solicitó la desestimación de la demanda. En la alternativa, arguyó que el caso debía atenderse conforme al procedimiento ordinario.

Así las cosas, el TPI emitió resolución mediante la cual le anotó la rebeldía a la Corporación. Además, determinó que no se demostró que existiera alguna de las excepciones dispuestas para convertir el procedimiento sumario en uno ordinario. Inconforme, la Corporación acudió ante este Tribunal (caso KLCE-2004-01200). El 22 de noviembre de 2004, notificada el 7 de diciembre de 2004, otro Panel emitió sentencia mediante la cual revocó la resolución recurrida. Determinó, en síntesis, que Vanguardia no podía invocar los beneficios de la Ley Núm. 2 para cobrar una pensión por retiro, dado que dicho pago no estaba cubierto expresamente al amparo de una ley como un derecho o beneficio garantizado a los ex-empleados. Por lo tanto, la reclamación debía tramitarse por el procedimiento ordinario, ya que ésta no estaba contemplada dentro de la reclamación de salarios incluida en la Ley Núm. 2. Además, el referido Panel resolvió que procedía dejar sin efecto la anotación de rebeldía a la Corporación. En vista de lo anterior, se remitió el caso al TPI para la continuación de los procedimientos conforme a lo resuelto.

Luego de varios incidentes procesales ante el TPI, Vanguardia presentó una *Moción de Sentencia Sumaria*. Sostuvo que no existían hechos materiales en controversia por lo que procedía dictar sentencia a su favor y condenar a la Corporación pagarle ciento setenta y siete mil dólares ($177,000), más una cantidad igual por concepto de doble penalidad, los intereses acumulados, las costas, gastos y el veinticinco por ciento (25%) por concepto de honorarios de abogado.

Por su parte, la Corporación se allanó única y exclusivamente al pago de los ciento setenta y siete mil dólares ($177,000) como compensación en virtud del convenio colectivo suscrito entre las partes. Además, solicitó se dictara sentencia sumaria desestimando la imposición de la doble penalidad, intereses legales y el veinticinco por ciento (25%) en honorarios de abogado. Respecto a la imposición de la doble penalidad, sostuvo que ésta no procedía, toda vez que no existía estatuto o contrato que reconociera su aplicación. Asimismo, se opuso a que se le condenara al pago de honorarios, ya que entendía no había sido temeraria en la tramitación del caso.

El 17 de mayo de 2007, notificada el 21 del mismo mes y año, el TPI emitió la sentencia apelada mediante la cual condenó a la Corporación pagar la cantidad de ciento setenta y siete mil dólares ($177,000), intereses al tipo legal desde que surgió la causa de acción, así como mil quinientos dólares ($1,500) en concepto de honorarios de abogado. El referido foro señaló que este Tribunal, en la sentencia de 2004, resolvió que la reclamación de Vanguardia, a saber, el pago de pensiones por retiro, no estaba cubierta por ninguna ley laboral. Señaló, además, que dicho foro también determinó que los beneficios de la Ley Núm. 2 no podían ser invocados por los ex-empleados representados por Vanguardia. En vista de ello, el TPI concluyó que a los hechos de este caso no le aplica ninguna ley a base de la cual se pueda imponer la medida punitiva de pagar una suma igual a la reclamada por Vanguardia.

Por otra parte, el TPI señaló que examinó detenidamente las cláusulas del convenio colectivo entre las partes, del cual nace la reclamación, y no identificó ninguna cláusula que concediera la referida doble compensación. Dicho foro también expresó que a los hechos de este caso le aplicaba lo resuelto por el Tribunal Supremo a los efectos de que para que proceda, como medida punitiva, el derecho a una doble compensación, la autorización tiene que surgir claramente de una ley, convenio colectivo o contrato particular. Por último, el TPI determinó que igual norma aplicaba a la reclamación del pago del veinticinco por ciento (25%) de la cantidad reclamada por concepto de honorarios de abogado.

Inconforme, Vanguardia presentó el recurso KLAN-2007-00973 sosteniendo, en síntesis, que erró el TPI al no imponerle a la Corporación la doble penalidad ni el veinticinco por ciento (25%) en concepto de honorarios

de abogado. Atendido el escrito de apelación, este Tribunal emitió una Sentencia el 23 de abril de 2008 en la que concluyó:

"En este caso, Vanguardia sostiene que erró el TPI al no.imponer la doble compensación como penalidad, así como al no otorgarle 25% en concepto de honorarios de abogado. No le asiste la razón."

Como indicó el TPI, de un análisis del convenio colectivo suscrito entre las partes, del cual surge la reclamación objeto de la demanda, no se desprende que dicha compensación se hubiese pactado. Según el derecho esbozado anteriormente, para que la referida imposición proceda, ésta debe surgir del convenio colectivo o de alguna ley. Sin embargo, no se nos ha citado, ni hemos hallado ley alguna, que lo autorice. Igual ocurre con los 25% en concepto de honorarios de abogado reclamados.

Debemos señalar que la sentencia emitida en el caso KLCE-04-01200 constituye la ley del caso en este caso. Tomamos conocimiento judicial de ello, por lo que lo resuelto allí sobre la inaplicabilidad de la Ley Núm. 2, así como de otras leyes laborales, rige en este caso.

Por otra parte, Vanguardia alega que el TPI no determinó que la Corporación fue temeraria en la tramitación del caso. Ello no es cierto. El referido foro le impuso a dicha entidad $1,500 en honorarios de abogado. Es menester recordar que la determinación sobre si una parte ha procedido con temeridad o no descansa en la sana discreción del tribunal. *Ramírez v. Club Cala de Palmas, supra.*

Es norma reiterada que los tribunales apelativos no deben intervenir con el ejercicio de discreción de los Tribunales de Primera Instancia, salvo que se les demuestre que hubo un craso abuso de discreción, que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que la intervención en esa etapa evitará un perjuicio sustancial. *Lluch v. España Service Sta.*, 117 D.P.R. 729, 745 (1986).

El juez que preside un caso en el tribunal de instancia tiene amplia discreción para evaluar si las actuaciones y tácticas litigiosas de una parte litigante han alargado el litigio sin justificación o han requerido tiempo, esfuerzo y gastos innecesarios a la parte adversa. Concluimos, en cuanto a la imposición de honorarios de abogado, que Vanguardia no demostró en forma alguna que el tribunal haya abusado de su discreción al imponerle a la Corporación $1,500 de honorarios de abogado.

Por los fundamentos expuestos anteriormente, se confirma la sentencia apelada.

De dicha Sentencia, Vanguardia recurrió mediante recurso de *certiorari* ante el Tribunal Supremo, quien luego de evaluarlo, el 26 de septiembre de 2008 emitió una Resolución declarando No Ha Lugar a la expedición del auto solicitado. Eventualmente, la Sentencia advino final y firme.

El 3 de noviembre de 2008, Vanguardia presentó ante el TPI una moción de ejecución de sentencia. Con ella acompañó los cómputos de los intereses acumulados desde que surgió la causa de acción, y una tabla de las tasas de interés aplicable a sentencias judiciales. El 6 de noviembre de 2008, la Corporación presentó una replica a dicha moción en la que objetó la base de la cantidad para el cómputo de los intereses.

Luego de varios trámites procesales, la Corporación consignó ante el TPI la cantidad de ciento cuarenta y nueve mil quinientos cincuenta y un mil dólares con setenta centavos ($149,551.70). El 28 de enero de 2009 Vanguardia impugnó la suma consignada y los cómputos de intereses acumulados efectuados por la Corporación. El 6 de febrero de 2009, el TPI emitió una orden para que ésta, en un término de veinte (20) días expresara su posición. Trascurrido el término sin que la Corporación expresara su posición, Vanguardia le solicitó al Foro Primario que ordenara el pago de las sumas reclamadas. El 12 de marzo de 2009, el TPI emitió

una Orden·declarando no ha lugar la impugnación de la cuantía consignada y aceptando la·consignación de la Corporación.

Inconforme con dicha determinación, Vanguardia compareció ante nosotros el 15 ·de abril de 2009. Mediante su recurso, nos planteó un total de cinco (5) errores que, como muy bien reconoce, se encuentran estrechaménte relacionados y los cuales giran en torno a si el Foro Primario incidió al declarar no ha lugar la impugnación de la cuantía consignada, al aceptar la consignación que hiciera la Corporación y al aplicar un interés legal erróneo sobre las cuantías.

Evaluado los errores señalados, el 8 de mayo de 2009 emitimos una Resolución en la que le ordenamos al TPI que fundamentara el dictamen recurrido, esto con el propósito de ejercer nuestra función revisora. De esta manera, el tribunal *a quo,* el 23 de junio de 2009, emitió una Resolución en la el fundamentó la determinación recurrida.

De esta forma, examinados los argumentos de Vanguardia, así como los documentos que obran en autos, nos encontramos en posición de resolver.

## II

La Corporación Azucarera de Puerto Rico fue creada mediante la Resolución Núm. 27 del 29 de enero de 1973, por la Junta de Gobierno de la Autoridad de Tierras de Puerto Rico, como una corporación subsidiara doméstica de dicha Autoridad. En tal Resolución, la Autoridad estableció que "*como corporación pública, la Corporación Azucarera tendrá existencia y personalidad jurídica propia, separada y aparte de las de la Autoridad de Tierras y del Estado Libre Asociado de Puerto Rico, y en su consecuencia, a partir de la fecha de su creación, las deudas, obligaciones, contrato, bonos, recibos, gastos, cuentas, fondos, empresas y propiedades de la Corporación Azucarera; y sus funcionarios, agentes o empleados, debe entenderse que son de la mencionada Corporación Azucarera y no de la Autoridad de Tierras de Puerto Rico ni del Estado Libre Asociado de Puerto Rico, ni de ninguna de sus agencias.*" (Énfasis Nuestro).

Aclarada la naturaleza y el alcance de la Corporación Azucarera, veamos si para efectos de la cuantía de una sentencia, le aplica la tasa de interés legal de una empresa privada o de una entidad gubernamental.

La Regla 44.3 de las de Procedimiento Civil vigentes dispone que:

"(a) *Se incluirán intereses al tipo que fije por reglamento la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras y que esté en vigor al momento de dictarse la sentencia, en toda sentencia que ordena el pago de dinero, a computarse sobre la cuantía de la sentencia desde la fecha en que se dictó la sentencia y hasta que ésta sea satisfecha, incluyendo costas y honorarios de abogado. El tipo de interés se hará constar en la sentencia.*"

La Junta fijará y revisará periódicamente la tasa de interés por sentencia tomando en consideración el movimiento en el mercado y con el objetivo de desalentar la radicación de demandas frívolas, evitar la posposición irrazonable en el cumplimiento de las obligaciones existentes y estimular el pago de las sentencias en el menor tiempo posible.

"(b) *El tribunal también impondrá a la parte que haya procedido con temeridad, el pago de interés al tipo que haya fijado la Junta en virtud del inciso (a) de esta regla y que esté en vigor al momento de dictarse la sentencia desde que haya surgido la causa de acción en todo caso de cobro de dinero y desde la radicación de la demanda, en caso de daños y perjuicios, y hasta la fecha en que se dicte sentencia a computarse sobre la cuantía de la sentencia, excepto cuando la parte demandada sea el Estado Libre Asociado de Puerto Rico, sus municipios, agencias, instrumentalidades o funcionarios en su carácter oficial. El tipo de interés se hará*

*constar en la sentencia."* (Énfasis Nuestro)

A tales efectos, el Tribunal Supremo de Puerto Rico ha indicado que "resulta sumamente interesante el hecho de que la Regla 44.4 (e) de las Reglas de Procedimiento Civil de 1958 -la regla equivalente a la vigente Regla 44.3 (b)-, eximía del pago de interés legal por temeridad al Estado Libre Asociado, a sus municipios, sus agencias y a las corporaciones públicas. Su terminología, como hemos visto, fue enmendada en las Reglas de 1979 al omitirse la referencia a las corporaciones públicas. *Ello, a nuestro juicio, es indicativo de que en opinión del legislador las corporaciones públicas no deben gozar del privilegio de estar exentas del pago de honorarios de abogado y de intereses legales por razón de temeridad.* Evidencia adicional de lo antes expresado, por último, lo constituye el hecho de que cuando el legislador ha querido eximir a una corporación pública del pago de dichos conceptos, así lo ha dispuesto expresamente." (Énfasis nuestro). *Rodríguez Cancel v. A.E.E.,* 116 D.P.R. 443 (1985).

Conforme a lo anterior, la Corporación Azucarera, por ser una corporación pública, con personalidad jurídica propia, independiente y separada de la del Estado Libre Asociado de Puerto Rico, no está incluida ni cubierta por la exención contenida en el referido inciso (b) de la citada Regla 44.3 de las de Procedimiento Civil. Véase *Rodríguez Cancel v. A.E.E., supra.*

Conforme a la sentencia emitida el 17 de mayo de 2007 por el tribunal de instancia, la cual es final y firme, se estableció que la cantidad adeudada por la Corporación a Vanguardia es de ciento setenta y siete mil dólares ($177,000) así como mil quinientos dólares ($1,500) por concepto de honorarios de abogado. De esta forma, la cuantía de ciento cuarenta y nueve mil quinientos cincuenta y un dólares con setenta centavos ($149,551.70) consignada por la Corporación en el TPI es una cantidad menor a la adeudada. Ante esta realidad, resolvemos que incurrió en error el foro primario al aceptar la consignación y al declarar no ha lugar la impugnación de la misma. De igual forma, incidió al determinar los intereses legales a ser satisfechos por la Corporación.

Por tal razón, procede que revoquemos la determinación recurrida y devolvamos el caso ante el foro primario. Éste deberá celebrar una vista en la cual realice los cálculos correspondientes en cuanto al monto del principal adeudado y determine el interés legal a ser satisfecho a cada empleado unionado por la Corporación a tenor con lo aquí resuelto. El TPI deberá en su dictamen detallar el cálculo realizado.

### III

Por los fundamentos antes expuestos, se expide el auto solicitado, se revoca el dictamen recurrido y se devuelve el caso al foro primario para que continúe con los procedimientos de conformidad con este dictamen.

Notifíquese.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones