Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| JEANN B. ORTIZ SALGADO<br><br>Apelado<br><br>v.<br><br>INTERNATIONAL MEDICAL SERVICES, ASEGURADORA XYZ<br><br>Apelante | KLAN202401045 | Apelación Procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Civil Núm.: PO2020CV02063<br><br>Sobre: Daños, Impericia Profesional contra otros profesionales (no Médicos) |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, y el Juez Marrero Guerrero.

Pagán Ocasio, juez ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 13 de mayo de 2025.

### I.

El 22 de noviembre de 2024, International Medical Services (IMS o parte apelante) presentó una *Apelación* en la que solicitó que revoquemos una *Sentencia* emitida el 9 de octubre de 2024, notificada y archivada digitalmente en autos el 10 de octubre de 2024 por el Tribunal de Primera Instancia, Sala Superior de Ponce (TPI o foro primario).[2] En el dictamen, el TPI declaró Ha Lugar la *Demanda* promovida por la señora Jeann B. Ortiz Salgado (señora Ortiz Salgado o apelada) en reclamo de daños y perjuicios.

El 2 de diciembre de 2024, IMS radicó una *Moción sobre la transcripción de la prueba oral* en la que nos informó que presentaría la reproducción de la prueba oral del día del juicio y un alegato

---

[1] Ver Orden Administrativa OAJP-2021-086.
[2] Apéndice de la *Apelación,* Anejo I, págs. 1-19.

suplementario conforme a las Reglas 19 y 20 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 19 y R. 20, porque levantó varios errores relacionados con la suficiencia y apreciación de la prueba en el recurso.

El 4 de diciembre de 2024, en vista de que la parte apelante informó que utilizaría la Transcripción de Prueba Oral (TPO) como método de reproducción, emitimos una *Resolución* en la que concedimos a la parte apelante hasta el 14 de enero de 2025 para que remitiera a la apelada copia de la TPO, con la intención de que hicieran los esfuerzos razonables para lograr una TPO estipulada. Además, se pormenorizó el trámite a seguir para el perfeccionamiento del recurso.

El 14 de enero de 2025, IMG presentó una *Moción en cumplimiento de orden* en la que sometió la TPO e informó que el 10 de diciembre de 2024 remitió copia de la TPO a la apelada para su revisión. La parte apelante indicó que le volvió a dar seguimiento al asunto el 13 de enero de 2025 y que la apelante no mostró reparos.

El 16 de enero de 2025, emitimos una *Resolución* en la que concedimos a la parte apelada un término de cinco (5) días para que informara si estipulaba la TPO.

El 29 de enero de 2025, la señora Ortiz Salgado presentó un *Escrito asumiendo representación legal y en cumplimiento de orden* en la que solicitó que se acepte al abogado que sometió el escrito como la representación legal de la apelada e informó que estipulaba la TPO.

El 7 de febrero de 2025, emitimos una *Resolución* en la que aceptamos la representación legal anunciada y acogimos la TPO estipulada. Ante ello, concedimos a la parte apelante un término de treinta (30) días para presentar su alegato suplementario.

El 12 de marzo de 2025, IMG presentó un *Alegato suplementario de la parte apelante-demandada* en la que solicitó que revoquemos la *Sentencia* apelada.

El 13 de marzo de 2025, emitimos una *Resolución* en la que concedimos treinta (30) días a la parte apelada para presentar su alegato en oposición.

El 21 de abril de 2025, la señora Ortiz Salgado presentó el *Alegato* en el que solicitó que se confirme la *Sentencia* apelada.

Con el beneficio de la comparecencia de ambas partes, damos por perfeccionada la *Apelación* de epígrafe y, en adelante, pormenorizamos los hechos atinentes a este recurso.

**II.**

El caso de marras tuvo su génesis el 2 de diciembre de 2020 cuando la señora Ortiz Salgado radicó una *Demanda* en contra de IMS en reclamo de daños y perjuicios.[3] Alegó que IMS le causó daños cuando le envió un resultado de prueba de paternidad que pertenecía a otras personas que no eran su hija menor de edad y su presunto padre. Esbozó que el 12 de agosto 2019 IMS le envió por *WhatsApp* el resultado de la prueba realizada el 5 de agosto de 2019 con un resultado negativo y que cuando ésta preguntó si existía la posibilidad de que hubiera algún error, IMS le respondió que los marcadores de ADN no tenían margen de error por lo que el resultado era negativo y, en consecuencia, su pareja no era el padre de su hija. Mencionó que más tarde IMS llamó a la señora Ortiz Salgado para informarle que le habían enviado unos resultados equivocados y al día siguiente recibió otro con resultado positivo. No obstante, la apelada arguyó que cuando recibió el resultado negativo, su pareja comenzó a insultarla y se marchó del hogar. Asi las cosas, alegó que cuando recibió los resultados correctos ya había

---

[3] Íd., Anejo III, pág. 29-31.

sufrido los daños. Por lo cual, solicitó una indemnización por una cantidad no menor de $20,000.00 por concepto de daños, sufrimientos y angustias mentales, más una cantidad razonable por concepto de gastos, costas y honorarios de abogado.

El 7 de febrero de 2021, IMS presentó una *Contestación a demanda* en la que aceptó que el enfermero del laboratorio le envió a la señora Ortiz Salgado los resultados de una prueba de ADN que pertenecía a otras personas y que tenía el nombre de esas otras personas.[4] No obstante, negó la existencia de una relación causal entre los alegados daños sufridos por la apelada y los actos u omisiones que se le imputan a la parte apelante.

El 5 de abril de 2023, las partes conjuntamente presentaron el *Informe de conferencia preliminar entre abogados* en el que estipularon una serie de hechos y documentos sobre los cuales no existía controversia.[5]

El 16 de mayo de 2023, IMS presentó una *Solicitud de sentencia sumaria* en la que solicitó la desestimación de la *Demanda* alegando que la señora Ortiz Salgado era incapaz de probar que IMS incurrió en actos u omisiones constitutivos de impericia profesional en el manejo de la prueba de ADN realizada a su hija menor de edad y al padre de ésta.[6] Asimismo, adujo que hay ausencia total del nexo causal entre algún acto negligente constitutivo de impericia profesional y los daños alegados en la *Demanda*. Añadió que debía desestimarse la reclamación de daños y perjuicios porque la acción por alineación de efectos no es compensable bajo nuestro ordenamiento jurídico.

El 15 de junio de 2023, la señora Ortiz Salgado presentó una *Oposición a solicitud de sentencia sumaria* en la que solicitó que se

---

[4] Íd., Anejo IV, págs. 32-39.
[5] Íd., Anejo V, págs. 40-54.
[6] Íd., Anejo VI, págs. 55-121.

dicte sumariamente la negligencia de IMS y que se atienda en juicio el asunto de los daños sufridos por la apelada.[7] En ésta, admitió la mayoría de los hechos propuestos como incontrovertidos por IMS, aunque negó que el único daño alegado haya sido ser insultada por el padre de su hija y el abandono del hogar por éste.

El 6 de julio de 2023, el TPI emitió una *Sentencia* mediante la cual declaró Ha Lugar la *Solicitud de sentencia sumaria* presentada por IMS y, en consecuencia, desestimó la *Demanda.*[8] En el dictamen, el foro primario concluyó que, a pesar de haberse cometido el error en la notificación de los resultados de la prueba de ADN, dicho error no guarda relación causal con los daños que la señora Ortiz Salgado narró. Razonó que los daños parecieran haber sido autoinfligidos por su propia negligencia. Asimismo, determinó que no existe relación causal entre el envío del resultado equivocado y el rompimiento de su relación de pareja. Añadió que el grado de negligencia de la señora Ortiz Salgado al ver el resultado sin mirar el nombre de las partes absorbe cualquier negligencia que haya podido incurrir IMS.

El 31 de julio de 2023, la apelada presentó un *Escrito solicitando reconsideración* de la *Sentencia* emitida el 6 de julio de 2023.[9] El 3 de agosto de 2023, el foro primario declaró No Ha Lugar la solicitud de reconsideración.[10]

Inconforme, la apelada presentó un recurso de *Apelación* ante este tribunal y este mismo panel emitió una *Sentencia* el 12 de octubre de 2023 en el caso con el alfanumérico KLAN202300780 en la que, por concluir que se cometieron los errores señalados, revocamos el dictamen apelado y devolvimos el caso al foro primario

---

[7] Íd., Anejo VII, págs. 122-132.
[8] Íd., Anejo VIII, págs. 133-150. Notificada y archivada en autos digitalmente el 13 de julio de 2023.
[9] Íd., Anejo IX, 151-155.
[10] Véase Anotación Judicial Núm. 54 del expediente digital del caso en el Sistema Unificado de Manejo de Caso (SUMAC).

para que atendiera la determinación y valoración de los daños sufridos por la señora Ortiz Salgado, así como la adjudicación correspondiente de responsabilidad.[11] Determinamos que existía controversia sobre los siguientes hechos materiales: (1) la negligencia de IMS al remitir los resultados incorrectos a la parte apelante, toda vez que es la parte experta en la toma y el procesamiento de las muestras, así como en notificar los resultados; (2) el tipo de daño que sufrió la apelante, si alguno; y (3) el nexo causal entre la notificación incorrecta de los resultados con los alegados daños reclamados. Además, resolvimos que el foro primario erró en la aplicación del derecho a los hechos que consideró incontrovertidos. Concluimos que IMS incurrió en un acto inherentemente negligente cuando envió los resultados equivocados de una prueba de paternidad, más allá de la posible imprudencia de la señora Ortiz Salgado. Por esa razón, colegimos que no existía base suficiente para estimar que la posible imprudencia de la apelada debía absorber totalmente la negligencia clara del acto de IMS.

Devuelto el caso al foro de origen, el 23 de mayo de 2024 el TPI celebró un juicio en su fondo, cuyas incidencias quedaron recogidas en la *Minuta* y en la TPO.[12] La prueba documental estipulada consistió en lo siguiente: (1) Certificado del laboratorio; (2) Hoja de información personal; (3) Autorización de prueba de ADN; (4) Resultados prueba de ADN; (5) Resultados de Ángel Vázquez Sánchez (6) Conversaciones de WhatsApp. La prueba testifical consistió en el testimonio bajo juramento de la señora Ortiz Salgado, quien testificó sobre los alegados daños sufridos a consecuencia del recibo erróneo del resultado de la prueba de ADN y de Javier Rivera

---

[11] Apéndice de la *Apelación,* Anejo X, págs. 156-171.
[12] Véase Anotación Judicial Núm. 68 del expediente digital del caso en SUMAC.

Rivera (señor Rivera Rivera)—enfermero de IMS—, quien testificó sobre la manera en que notificó dicho resultado.

A continuación, pormenorizamos las porciones de la TPO atinentes a los errores señalados por la parte apelante, los cuales consignaremos posteriormente.

### Señora Jeann Ortiz Salgado

La señora Ortiz Salgado declaró que recibió mediante *WhatsApp* el resultado de una prueba de paternidad que tenía un resultado negativo.[13] Expresó que como no entendió el resultado llamó al laboratorio para que le aclararan el mismo y que le informaron que el resultado era que el señor Vázquez Sánchez no era el padre de su hija menor de edad.[14] Mencionó que luego mediante llamada el laboratorio le informó que se había dado un error en el envío de la prueba.[15] Testificó que recibir el resultado equivocado le causó perder la relación con su familia y su trabajo.[16]

### Señor Javier Rivera Rivera

El señor Rivera Rivera declaró que le realizó una prueba de paternidad al señor Vázquez Sánchez y que le envió el resultado a la señora Ortiz Salgado por *WhatsApp* pero que ante las preguntas de la apelada cuestionando el resultado se dio cuenta que había seleccionado y enviado un resultado equivocado.[17] Expresó que le indicó a la apelada que posteriormente le estarían enviando el resultado correcto y que, a partir de ese momento, ni la señora Ortiz Salgado le increpó ni el señor Vázquez Sánchez le reclamó.[18]

Posteriormente, el 9 de octubre de 2024, el TPI emitió una *Sentencia* en la que declaró Ha Lugar la *Demanda* y condenó a IMS

---

[13] TPO del 23 de mayo de 2024, pág. 32, líneas 8-11.
[14] Íd., líneas 14-16.
[15] Íd., pág. 65, líneas 22-24 a pág. 66, líneas 1-9.
[16] Íd., pág. 53, líneas 5-24 a pág. 54, líneas 1-15.
[17] Íd., pág. 87, líneas 20-24 a pág. 88, líneas 1-2; pág. 89, línea 24 a pág. 90, líneas 1-14.
[18] Íd., pág. 90, línea 15-22.

al pago de $32,000.00 por concepto de daños y angustias mentales a favor de la señora Ortiz Salgado.[19] Para sustentarla hizo las siguientes determinaciones de hechos al aquilatar la prueba documental y testifical desfilada ante sí:

1. La demandante, Sra. Jeann B. Ortiz Salgado, es residente de Jayuya, estudió hasta Cuarto Año, es actualmente soltera y ama de casa.

2. Contrató los servicios de la parte demandada IMS para una prueba de ADN, tras ser recomendada por su señor padre.

3. La parte demandada, International Medical Services, es un laboratorio forense dedicado a colectar y distribuir pruebas de ADN en Puerto Rico. Cuenta con la autorización de la Universal Forensics Corporation, la cual a su vez cuenta con la acreditación de la Association for the Advancement of Blood and Biotherapies.

4. La Sra. Ortiz Salgado sostuvo una relación amorosa con el señor Ángel Alexis Vázquez Sánchez de poco tiempo como pareja. Conoció al Sr. Vázquez Sánchez en el trabajo en la fábrica Baxter en Jayuya. Le dio entrenamiento en el trabajo, y comenzaron su relación de pareja después de un año de amistad.

5. La Sra. Ortiz Santiago describió que tuvo un embarazo "bonito".

6. La Sra. Ortiz Santiago y el Sr. Vázquez Sánchez procrearon una niña que nació el 5 de agosto de 2019.

7. El señor Vázquez Sánchez solicitó a International Medical Services que se le practicaran pruebas de ADN para corroborar que éste era el padre biológico.

8. Las muestras para la prueba de ADN se tomaron a la bebé y al padre el mismo día del nacimiento de la bebé, el 5 de agosto de 2019.

9. A la bebé se le practicó la prueba en el Hospital San Lucas en Ponce, y al presunto padre, en su hogar en Jayuya.

10. El 12 de agosto de 2019 la Sra. Ortiz Salgado solicitó a International Medical Services que le enviaran el resultado de la prueba de ADN por WhatsApp porque no usa correo electrónico.

11. El 12 de agosto de 2019 a las 4:38 de la tarde International Medical Services envió a la Sra. Ortiz Salgado un resultado de prueba de ADN que contenía los nombres de otras personas examinadas.

12. El 12 de agosto de 2019 la Sra. Ortiz Salgado al recibir resultado no lo entendía, y lo reenvió el resultado correspondiente al Sr. Vázquez Sánchez, a su familia que se encontraba presente, y a terceras personas vía telefónica.

13. El mismo día la Sra. Ortiz Salgado llamó por teléfono al laboratorio IMS porque no entendía el resultado de la prueba. Del laboratorio le explicaron que tenían la prueba en la mano y que el resultado negativo significaba que el

---

[19] Apéndice de la *Apelación*, Anejo I, págs. 1-19. Notificada y archivada digitalmente en autos el 10 de octubre de 2024.

Sr. Vázquez Sánchez no era el padre de la bebé. Durante el evento en controversia la Sra. Ortiz Salgado estaba en su ca[s]a con su madre, el Sr. Vázquez Sánchez. El laboratorio le dijo tres (3) veces que el Sr. Vázquez Sánchez no era el padre del bebé.

14. La Sra. Ortiz Salgado [no] quería decirles nada al Sr. Vázquez Sánchez y a sus padres. El incidente creó mucho dolor físico y emocional a la Sra. Ortiz Salgado al sentir la pérdida de confianza de su pareja el Sr. Vázquez Sánchez, padre del bebé. La frustración que sintió el Sr. Vázquez Sánchez resultó que le falta el respeto a la Sra. Ortiz Salgado. La notificación del laboratorio le crearon un estado de desesperación, de ansiedad, de confusión y mala noticia le empeoraron los dolores y el estado de debilidad por la cirugía de cesárea.

15. Ese mismo día 12 de agosto de 2019 a las 6:03 de la tarde, International Medical Services se comunicó con la demandante para informarle que le había enviado un resultado que no correspondía a la menor y el padre de esta, sino a otras personas.

16. Al día siguiente, el 13 de agosto de 2019, el laboratorio le envió a al Sr. Vázquez Sánchez y a la demandante los resultados correspondientes a su hija y al Sr. Vázquez Sánchez. Ese día el Sr. Vázquez Sánchez se encerró con los padres de la Sra. Ortiz Salgado, y no le volvió a dirigir la palabra a la Sra. Ortiz Salgado.

17. Los resultados de la prueba de ADN practicada a la menor y al Sr. Vázquez Sánchez revelan que son padre e hija.

18. Como resultado de la pérdida de confianza por el incidente la Sra. Ortiz Salgado y el Sr. Vázquez Sánchez terminaron su relación sentimental. Por más de dos (2) meses el Sr. Vázquez Sánchez rehusó hablar con la Sra. Ortiz Salgado. Las visitas a la bebé eran con la madre de la Sra. Ortiz Salgado, pero sin ella presente.

19. El incidente del laboratorio causó el rompimiento de la relación de pareja entre el Sr. Vázquez Sánchez y la Sra. Ortiz Salgado, la relación de padres con la bebé, y causó problemas en la relación entre los padres la Sra. Ortiz Salgado. Esto causó que la Sra. Ortiz Salgado tuviera que salir de la casa de sus padres y volver a su casa que tenía alquilada, como un negocio propio.

20. El estado de nervios que causó el incidente empeoró el estado físico de la Sra. Ortiz Salgado que resultó en entrar en tratamiento de depresión, uso de medicamentos Klonopin y Klonosepan para controlar su estado de sufrimiento y ansiedad, condición por la que había sido tratada en el pasado. El uso de medicamentos para esta condición afectó el poder lactar al bebé.

21. Al regresar al trabajo a la fábrica Baxter, el Sr. Vázquez Sánchez que era compañero de trabajo solicitó cambio de posición. La Sra. Ortiz Salgado no pudo soportar estar turnos de ocho (8) horas sentadas en máquinas en la fábrica. La fábrica la despidió por problema de asistencia.

22. Como resultado del incidente del resultado de laboratorio erróneo, perdió su relación de pareja, perdió la relación de padre con su bebe, perdió la relación con sus padres, la madre le dejó de cuidar el bebé que junto a sus

> condiciones de salud y uso de medicamentos fuertes para [sic] resultaron en ausentismo del trabajo por lo que fue despedida, perdió su pequeño negocio de alquiler y rentas de su propiedad, perdió su trabajo y el correspondiente ingreso, salario y plan médico después de 8 años en ese trabajo. Tuvo que radicar Quiebra, perdió su crédito, no tiene dinero. Toda esta experiencia ha provocado un estado de sufrimiento emocional y ansiedad continuo.
>
> 23. La bebé cumplió años en agosto. Todavía sufre por la pérdida de lo que describió como una relación bonita de pareja.

En el dictamen, el foro primario concluyó, tras evaluar la prueba desfilada y en virtud de lo resuelto por este mismo tribunal precedentemente en términos que IMS incurrió en un acto inherentemente negligente, que la señora Ortiz Salgado sufrió y todavía sufre ansiedad, tristeza, confusión y frustración y dolor físico por agravarse su estado de debilidad causado por la cirugía de cesárea. Concluyó que los sufrimientos de la apelada son resultados directos y previsibles de la actuación de IMS.

En desacuerdo, el 25 de octubre de 2024, IMS presentó una *Solicitud de reconsideración* en la que solicitó al foro primario que reconsiderara la cuantía otorgada a la apelada o que la eliminara por ausencia de relación causal.[20] En esa misma fecha, el foro primario emitió, notificó y archivo digitalmente en autos una *Resolución* en la que declaró No Ha Lugar a la *Solicitud de reconsideración.*[21]

El 22 de noviembre de 2024, IMS acudió ante nos mediante este recurso de *Apelación* en el que le imputó al TPI la comisión de los siguientes errores:

> Erró el Tribunal de Primera Instancia al determinar que hubo causalidad entre los hechos y los daños alegados en la demanda, habiendo actuado en su determinación con pasión, perjuicio y parcialidad.
>
> Erró el Tribunal de Primera Instancia a no aplicar negligencia comparada a la parte apelada quien, conforme al testimonio

---

[20] Apéndice de la *Apelación*, Anejo XIV, págs. 178-194.
[21] Íd., Anejo XV, págs. 195-196.

vertido en juicio, dicha parte con su propia negligencia contribuyó a los alegados daños.

Erró el Tribunal de Primera Instancia en otorgar a la parte apelante una suma de dinero exagerada y desproporcional a los eventos del caso, cuyos parámetros utilizados no guardan relación al caso de autos.

Es su contención que el foro primario erró en la apreciación de la prueba oral y que debió analizar la doctrina de negligencia comparada, causalidad adecuada e imponer porcientos de responsabilidad. En particular, imputó error sobre las determinaciones de hechos núm.: 14, 18, 20, 21, 22 y 23. Arguyó que el testimonio de la señora Ortiz Salgado transmitió frustración e impotencia sobre una pena pasajera y que carece de los datos necesarios y descriptivos de sufrimientos profundos y permanentes que justificarían la indemnización que concedió. Además, adujo que la cuantía concedida no guarda causalidad ni proporción directa con los daños manifestados, testificados y que para el TPI fueron probados, tras aquilatar la evidencia desfilada.

Tras acoger la TPO, el 12 de marzo de 2025, IMS presentó un *Alegato suplementario* en el que reiteró los argumentos esbozados en el recurso de *Apelación.* Arguyó que el TPI debió tener en cuenta al valorar los daños que había una desconfianza por parte del padre de la menor previo al recibo de la prueba de ADN equivocada. Además, adujo que el TPI erró al concluir que la mala noticia le empeoró los dolores y estado de debilidad por la cirugía de cesárea a la apelada porque no se desprende de prueba documental alguna que ésta haya acudido a algún facultativo médico a recibir atención. Sin embargo, alegó que la apelada incurrió en una conducta inapropiada al encerrarse en su vehículo y tomarse múltiples pastillas y que eso no prueba que sufrió los daños físicos que el TPI determinó como probados. También, argumentó que el alegado trato indiferente u hostil por parte del padre de la menor hacia la apelada

no guarda relación con el resultado de la prueba porque éste continuó con el mal trato luego de conocer y reconocer la paternidad. De otra parte, alegó que la pérdida de empleo de la apelada se debió a problemas personales que no guardan relación causal con la omisión imputada a IMS. Sostuvo que los daños que alegadamente se derivan de la prueba errónea solo pudieron prevalecer durante el tiempo en que se mantuvo la duda. Manifestó que todo lo que aconteció después es producto de la condición preexistente emocional de la apelada y conductas presuntamente asumidas por terceras personas ajenas a IMS por las que ésta no debe responder.

El 21 de abril de 2025, la señora Ortiz Salgado presentó un *Alegato* en el que solicitó que se confirme la *Sentencia* apelada. En cuanto al primer error, alegó que el acto negligente consistió en la emisión errónea, admitida por el laboratorio, de los resultados de paternidad; que el daño probado en juicio fue emocional y severo; y que el nexo causal fue razonablemente inferido por el TPI a partir de los eventos subsiguientes, sin que existiera causa externa que rompiera la cadena de causalidad. En cuanto al segundo error, adujo que su actuación de haber confiado en el informe emitido por el laboratorio que resultó ser erróneo es totalmente atribuible a la parte apelante. Argumentó que aun si se le reconociera alguna mínima falta de juicio, fue tan insignificante que no puede considerarse como generadora de responsabilidad proporcional a base de la doctrina de absorción de culpa. En cuanto al tercer error, arguyó que el monto otorgado es razonable y modesto en comparación con otros casos donde las angustias morales también resultaron de errores administrativos o profesionales.

Argumentó que el TPI examinó la prueba en su totalidad, incluyendo el testimonio de la apelada. Por lo que la determinación del foro recurrido nos merece la más alta de deferencia y no debe ser

variada. Aduce que la sentencia recurrida contiene un análisis ponderado de los efectos psicológicos, físicos, familiares y sociales que sufrió la apelada como resultado directo de la negligencia de la apelante.

**III.**

**A.**

La glosa jurisprudencial ha resuelto que, los foros superiores no intervendrán con las determinaciones de hechos ni las adjudicaciones de credibilidad realizadas por el TPI, al menos que haya incurrido en error manifiesto, pasión, prejuicio o parcialidad. *Rivera Menéndez v. Action Service*, 185 DPR 431, 444 (2012); *Rivera Figueroa v. Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 177 DPR 345, 356 (2009). De hecho, son pocos los casos en donde se ha concluido que el foro de instancia incurrió en pasión, prejuicio, parcialidad o error manifiesto al evaluar la prueba desfilada. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013).

Esta norma de deferencia judicial se apoya en que la tarea de apreciación de la prueba testifical está llena de elementos subjetivos y es el TPI quien está en mejor posición para aquilatarla. *Sucn. Rosado v. Acevedo Marrero*, 196 DPR 884, 917 (2016); véase también, *Dávila Nieves v. Meléndez Marín*, supra, pág. 771. Cónsono con ello, cuando "[l]a evidencia directa de una persona testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo que otra cosa se disponga por ley". Regla 110 (D) de Evidencia, 32 LPRA VI, R. 110; *Rivera Menéndez v. Action Service*, supra, pág. 444; *Rivera Figueroa v. Autoridad de Acueductos y Alcantarillados de Puerto Rico*, supra, pág. 357. Por su parte, los foros apelativos solo cuentan con "récords mudos e inexpresivos". *Rivera Torres v. Díaz López*, 207 DPR 636, 658 (2021).

Conforme a la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2, "[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos". La intervención de un foro apelativo con la evaluación de la prueba testifical procede "'en casos en que un análisis integral de dicha prueba cause en nuestro ánimo una insatisfacción o intranquilidad de conciencia tal que estremezca nuestro sentido básico de justicia'". ***Rivera Figueroa v. Autoridad de Acueductos y Alcantarillas de Puerto Rico***, supra, pág. 356 (*citando **Pueblo v. Cabán Torres***, 117 DPR 645, 648 (1986)). Por lo tanto, la parte apelante que cuestione una determinación de hechos realizada por el foro primario debe fundamentar la existencia de pasión, prejuicio o parcialidad, o error manifiesto. ***Rivera Figueroa v. Autoridad de Acueductos y Alcantarillas de Puerto Rico***, supra, pág. 356; ***Flores v. Soc. de Gananciales***, 146 DPR 45, 50 (1998).

**B.**

De igual modo, la tarea judicial de estimación y valorización de daños es una difícil y angustiosa, y para lo cual no existe un sistema mecánico para llegar a un resultado exacto con el cual todas las partes queden satisfechas y complacidas. ***Santiago Montañez v. Fresenius Medical***, 195 DPR 476, 490 (2016); ***Blás v. Hosp. Guadalupe***, 146 DPR 267, 339 (1998); ***Rodríguez Cancel v. A.E.E.***, 116 DPR 443, 451 (1985). Nuestro más alto foro ha expresado que el TPI está en mejor posición que los tribunales apelativos para evaluar la estimación y valorización de daños, pues son los que tienen contacto con directo con la prueba. ***Blás v. Hosp. Guadalupe***, supra, pág. 339. De igual modo, este ejercicio de valorización de daños tiene cierto grado de especulación y elementos

subjetivos como la discreción y el sentido de justicia y conciencia humana del juzgador de los hechos. *Santiago Montañez v. Fresenius Medical*, supra, pág. 490. Por lo tanto, los tribunales apelativos no intervendrán con la decisión que emitan los foros primarios a menos que las cuantías concedidas sean ridículamente bajas o exageradamente altas. *Santiago Montañez v. Fresenius Medical*, supra, pág. 490; *Blás v. Hosp. Guadalupe*, supra, pág. 339.

El Alto Foro ha advertido que los tribunales sentenciadores, además de evaluar aquellos casos comparables que serán utilizados como punto de partida para el proceso de determinar las cuantías a concederse por concepto de los daños sufridos según pautado en el caso de *Santiago Montañez v. Fresenius Medical*, supra, deberán realizar una gestión adicional. Estos deberán también tomar en consideración "las circunstancias particulares del caso considerado ante el Tribunal". *Mena Pamias v. Jiménez Melendez*, 212 DPR 758, 770 (2023), citando a *Herrera, Rivera v. S.L.G. Ramírez-Vicéns*, 179 DPR 774, 786 (2010). En ese sentido, la jueza o el juez sentenciador no puede descansar meramente en un cálculo matemático, sino que se trata de un análisis de dos pasos. *Mena Pamias v. Jiménez Melendez*, supra, 771.

**IV.**

En el caso de marras debemos resolver si el foro primario incurrió en error manifiesto en la apreciación de la prueba de daños y en la aplicación del derecho.

El TPI emitió una *Sentencia*, tras evaluar y aquilatar la prueba documental y testifical desfilada ante sí, en la que declaró Ha Lugar la *Demanda* incoada por la señora Ortiz Salgado y condenó a IMS al pago de $32,000.00 por los daños y perjuicios y angustias mentales sufridos por la apelada.

En su recurso, IMS arguyó que la mayoría de los daños emocionales que la señora Ortiz Salgado alegó que sufrió no tienen su génesis en la omisión negligente del laboratorio de enviar el resultado erróneo sino en la obsesión de la apelada en mantener una relación con el padre de la menor. Adujo que el testimonio de la apelada carece de los datos necesarios y descriptivos de sufrimientos profundos y permanentes que justificarían la indemnización concedida porque, según alegó, la cuantía concedida no guarda causalidad ni proporción directa con los daños testificados y probados a juicio del TPI. Argumentó que el TPI erró en analizar la doctrina de negligencia comparada, causalidad adecuada y en imponer porcientos de responsabilidad conforme a ello.

Por su parte, la apelada alegó que la *Sentencia* apelada se fundamenta en hechos probados en juicio y cuya conexión causal fue razonablemente establecida mediante testimonio directo y evidencia admitida, así como la credibilidad que le mereció al TPI los testimonios que analizó. Adujo que el nexo causal fue razonablemente inferido por el TPI a partir de los eventos subsiguientes, por el error admitido por el laboratorio. Asimismo, arguyó que contrató a IMS con la expectativa legítima de recibir resultados de paternidad certeros y confiables y que la única actuación que se le puede atribuir fue el haber confiado en el informe inicial emitido por el laboratorio, que resultó ser erróneo por causas totalmente atribuibles a la parte apelante.

Tras un análisis objetivo, sereno y cuidadoso del expediente del caso y de la TPO, en correcta práctica adjudicativa apelativa, resolvemos que el TPI no incurrió en los errores señalados por IMS.

Discutiremos los primeros dos señalamientos de error en conjunto por estar relacionados entre sí. IMS alegó que el foro

primario erró al determinar que hubo causalidad entre los hechos y los daños alegados y al no aplicar negligencia comparada porque, según alegó, la apelada contribuyó al daño según su testimonio en juicio.

Surge de la TPO que cuando la señora Ortiz Salgado recibió la notificación por *WhatsApp* con unos resultados, le pidió por texto al señor Rivera Rivera que se los explicara porque no los entendía, a lo que éste le respondió que el resultado era 0%, siendo negativo, que no era el papá de la nena.[22] Testificó que, en ese momento, llamó al laboratorio porque no entendía el documento, a lo que le respondieron que el señor Ángel Vázquez Sánchez no era el papá de la menor.[23] Declaró que al recibir la noticia entró en un estado de confusión.[24] Expresó que llamó por segunda vez y le explicaron que no había margen de error y que la persona que la atendía tenía el documento a la mano.[25] La apelada respondió que el nombre del señor Vázquez Sánchez no aparecía en la primera prueba que recibió por parte del laboratorio sino otros nombres pero que no sabía a quienes pertenecían.[26]

Según surge de su testimonio, el laboratorio le indicó en tres ocasiones que el señor Vázquez Sánchez no era el padre de la menor. La apelada mencionó que, en la segunda ocasión en que le responden que el resultado era negativo, comenzó a sangrar por la herida de la cirugía de cesárea y que se tomó pastillas para tranquilizarse.[27] También declaró que cuando comenzó a trabajar comenzó a irse y a faltar porque no podía soportar las ocho (8) horas de trabajo y que posteriormente fue despedida por ausentismo.[28]

---

[22] TPO del 23 de mayo de 2024, pág. 32, líneas 11-16.
[23] Íd., líneas 16-21.
[24] Íd., pág. 33, líneas 9-18.
[25] Íd., pág. 33, líneas 18-24 a pág. 34, líneas 4-5.
[26] Íd., pág. 68, líneas 20-24 a pág. 69, líneas 1-7.
[27] Íd., pág. 35, líneas 2-7.
[28] Íd., pág. 52, líneas 12-24.

Por otra parte, el señor Rivera Rivera declaró que cuando le envió el resultado mediante *WhatsApp* a la señora Ortiz Salgado no seleccionó el documento correcto en el sistema.[29] Declaró que pasada una hora y media aproximadamente fue que notificó el error en el envío de la prueba.[30]

En el caso de marras, concluimos que las determinaciones de hechos y la apreciación realizada por el TPI, están completamente sustentadas por la evidencia que tuvo ante sí. De la evidencia que tuvo ante sí el TPI surge palmariamente que la negligencia de IMS fue la causa de las angustias mentales, frustración y tristeza a la apelada. Esto surge palmariamente del testimonio de la señora Ortiz Salgado. Aun cuando la apelada testificó que en el resultado recibido por *WhatsApp* no aparecía el nombre del señor Vázquez Sánchez ni de su hija, ésta declaró que por esa razón llamó al laboratorio porque no entendía el documento y la respuesta que recibió, en dos ocasiones más, fue que el resultado era negativo y que el señor Vázquez Sánchez no era el padre de su hija. La apelada relató sobre la confianza en que descansó del laboratorio que realizó la prueba de ADN y que le expresó en las primeras tres ocasiones que el resultado enviado por *WhatsApp* era de su pareja y de su hija. El TPI conforme a la discreción que le es conferida y la credibilidad que le mereció el testimonio de la apelada, en correcta práctica adjudicativa, determinó que procedían los daños reclamados por ésta.

En cuanto al tercer señalamiento de error, IMS alegó que los casos que utilizó el foro primario para la valoración de daños no discuten sufrimientos ni angustias mentales similares a los que promovieron la demanda de epígrafe.

---

[29] Íd., pág. 89, líneas 14-21.
[30] Íd., pág. 90, líneas 23-24 a pág. 91, líneas 1-2.

Por su parte, la señora Ortiz Salgado arguyó que el monto concedido fue resultado de una evaluación prudente, razonada y ajustada por el TPI, conforme a las guías desarrolladas por el Tribunal Supremo y el valor probatorio que le concedió a la prueba desfilada ante sí.

A tenor con los hechos y daños narrados por la apelada que le merecieron credibilidad, el foro primario le concedió una indemnización por la cantidad de $32,00.00. El TPI determinó y computó las cuantías basándose en el caso **Santiago Montañez v. Fresenius Medical**, supra, y desglosó el cálculo matemático utilizado. Para cuantificar los daños utilizó el caso de **María Torres v. New Energy Consultants, Inc.,** KLRA201800278, en el que se otorgó la cantidad de $25,000.00 en daños morales y angustias mentales a pesar de que el daño patrimonial era de $12,500. En ese caso, la parte demandante optó por entrar en el contrato porque el demandado se comprometió a cobrar unos incentivos contributivos para un reembolso a favor de éstos. A base de los hechos allí alegados, la agencia administrativa determinó que el consentimiento de la parte demandante fue viciado por dolo incidental y concedió los daños.

Asimismo, el TPI utilizó como guía el caso de **Ángel Rivera v. Román Delgado**, KLAN200700043, también sobre incumplimiento contractual doloso en el que se impuso la suma de $20,000.00 por concepto de daños morales y angustias mentales. Este versó sobre una información errónea provista a la parte demandante. En ese caso, el TPI determinó que el demandado incurrió en dolo al constituir una hipoteca ya que hubo un elemento de engaño en cuanto a la necesidad de hipotecar la propiedad a favor del banco para poder realizar el negocio.

En el caso de **Albors Lahongrais v. Riera Carrión**, KLAN202301103, un panel hermano de este tribunal confirmó la determinación del TPI que concluyó que la reclamación de la apelada por el incumplimiento del apelante con el pago de la hipoteca era legítima y que la conducta del apelante le causó angustias mentales, daños morales y un posible daño a su crédito por ser codeudora de la obligación y codueña del inmueble hipotecado. Por esto, el TPI condenó al apelante a compensar a la apelada por la suma de $25,000.00 por daños morales y angustias mentales y $5,000.00 por el daño a su crédito.

En el caso de marras, el TPI, conforme al mandato de este tribunal y a la prueba documental y testifical que desfiló ante sí, concluyó que la señora Ortiz Salgado sufrió ansiedad, tristeza y confusión y frustración además de dolor físico por su estado de debilidad como resultado de la cirugía de cesárea. Entendió que tales sufrimientos, la pérdida económica, la ansiedad por perder su relación de pareja con el padre de su bebé son resultados directos y de esperarse ante la actuación de la parte apelante. La apelada declaró que confió en el laboratorio en cuanto al manejo de notificar el resultado de la prueba. Obsérvese que, en ambos casos utilizados de guía por el TPI, similar al de marras, la parte demandante confió en la información recibida de la parte demandada y la que les causó el daño.

Adviértase que el foro primario tuvo la oportunidad de evaluar el *demeanor* de los testigos en la silla testifical. A pesar de que la parte apelante considera que las sumas concedidas son excesivas, lo cierto es que no hizo referencia a ningún caso en particular, que pudiera utilizarse como referente, a los fines de modificar las cuantías concedidas. Tampoco nos puso en posición de intervenir, a base de la TPO, con las sumas concedidas por el foro primario.

En virtud de lo anterior, resolvemos que el TPI tampoco incidió en la valoración de los daños. El foro primario, en ausencia de precedente idéntico, hizo un ejercicio de analogía y recurrió a jurisprudencia cuyos daños fueron lo suficientemente semejantes a los hechos del caso de marras. Cabe recordar que el ejercicio de valoración de daños que realiza el juzgador de los hechos siempre involucra algún grado de especulación y elementos subjetivos, tales como la discreción y el sentido de justicia y conciencia humana. *Santiago Montañez v. Fresenius Medical Care*, supra, pág. 490.

Luego de un análisis pormenorizado del expediente y de la TPO, concluimos que el dictamen del foro primario está ampliamente apoyado en la prueba presentada en el juicio en su fondo. Como establece la Regla 110 (d) de Evidencia "[l]a evidencia directa de una persona testigo **que merezca entero crédito** es prueba suficiente de cualquier hecho", *supra*, R. 110 (Énfasis suplido). El foro primario, en su tarea de adjudicar credibilidad al testimonio prestado por los testigos no mostró haber actuado con pasión, prejuicio o parcialidad, que requiera nuestra intervención en el presente caso. *Gómez Márquez v. Periódico El Oriental Inc.*, 203 DPR 783, 792 (2020). De la misma manera, tras un estudio sosegado de la totalidad de la prueba testifical y documental desfilada, no se desprende que el TPI cometió un error manifiesto en su apreciación.

Como pormenorizamos anteriormente, las determinaciones de hecho y las valorizaciones de daños del foro primario merecen deferencia judicial. Este Tribunal no debe intervenir con las determinaciones de hechos y adjudicaciones de credibilidad realizadas por el foro primario, al menos que haya incurrido en error manifiesto, pasión, prejuicio o parcialidad. De igual modo, no podemos intervenir con las valorizaciones de daños que emite el TPI

a menos que las cuantías concedidas sean ridículamente bajas o exageradamente altas, lo que no ocurre en este caso. Lo anterior, pues ambos ejercicios conllevan elementos subjetivos y es el foro primario quien tiene contacto directo con la prueba.

Por lo cual, procede confirmar la determinación del TPI. Los errores señalados no fueron cometidos.

**V.**

Por los fundamentos expuestos, se confirma la *Sentencia* apelada.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. El Juez Sánchez Ramos concurre, en parte, pero disiente, en parte, pues la prueba demostró que la demandante incurrió en un grado sustancial de negligencia al no percatarse que el resultado recibido era el de otra persona, por lo cual procedía que el foro apelado le imputara al menos 50% de negligencia comparada.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones